————0————

GABRIEL VOGLER, Respondent, *vs.* JOHN MONTGOMERY, *et al.*, Appellants.

1. *Sheriff's sale—Purchase at by party to judgment—By stranger—Reversal of judgment—Effect of.*—Where plaintiff in a judgment purchases at the execution sale, his title will be forfeited by a subsequent reversal of the cause. (See Holland *vs.* Adair, v.55.)  But the title of a stranger, who purchases in good faith from said plaintiff in the judgment, and before the reversal of the same, will not be invalidated by such reversal.

2. *Homestead exemption—Construction of statute.—Claim not made by house keeper—Fraudulent conveyance by.*—Under § 2 of the act concerning Homesteads, (Wagn. Stat., 697.) where a homestead is claimed, the sheriff cannot proceed with his levy until he has ascertained by appraisers in the mode directed by the act, the extent and value of the premises, and that they are beyond the limit protected against executions.  And the claim is not lost when not

37—VOL. LIV.

| 54 | 577 |
| 31a | 16 |

| 54 | 577 |
| 99 | 596 |

| 54 | 577 |
| 100 | 342 |

| 54 | 577 |
| 40a | 623 |
| 40a | 638 |

| 54 | 577 |
| 102 | 574 |

| 54 | 577 |
| 107 | 316 |
| 47a | 275 |

| 54 | 577 |
| 131 | 691 |
| 64a | 448 |

| 54 | 577 |
| 150 | 450 |
| 78a | 633 |

| 54 | 577 |
| 160 | 17 |

| 54 | 577 |
| 91a | 641 |

| 54 | 577 |
| e169 | ³370 |

| 54 | 577 |
| 176 | ¹682 |
| e176 | ¹683 |

asserted by the housekeeper or head of the family, or by reason of the fact that he had theretofore fraudulently conveyed away the property.

3. *Injunction—Cloud on title, etc.*—Injunction will lie to restrain the sale of land where a cloud would be thereby thrown upon the title of plaintiff in the injunction, although no title would in fact pass to the purchaser at the sale.

*Appeal from Pettis Court of Common Pleas.*

*Philips & Vest and John Montgomery, Jr.*, for Appellants.

I. Shields was an innocent purchaser for a valuable consideration and the subsequent reversal of the judgment, whatever may have been its effect as between the plaintiff and defendant therein, in nowise affected the rights acquired by Shields, under his deed of trust. (Gott vs. Powell, 41 Mo. 420 ; Shields vs. Powers, 29 Mo., 317 ; Voorhes vs. Bank of U. S., 10 Peters, 475 ; Coleman vs. McAnnulty, 16 Mo., 173 ; Fithian vs. Monks, 43 Mo., 520 and 521 ; McNair vs. Biddle, 8 Mo., 257-268.)

II. The petition while it asks a court of equity to interfere for the protection of the petitioner against a threatened sale of his property, distinctly and repeatedly avers that the trustee has not even any such legal title as would authorize him to sell, and that no title whatever would pass by his sale, This being true, all past ground or pretext for the interposition of a court of chancery is taken away, and the naked allegation that a cloud would be cast over his title by such sale gives no strength to a petition that is already shown to be causeless. (Kuhn vs. McNeil, 47 Mo., 389 ; Drake vs. Jones, 27 Mo., 428, 431, 432; Janney vs. Spedden, 38 Mo., 395 ; City of St. Louis vs. Goode, 21 Mo., 216 ; Hopkins vs. Lovell 47 Mo., 102-3.)

III. The remedy by injunction does not lie to restrain a sale by a trustee in such case. (City of St. Louis vs. Goode, 21 Mo., 216 ; Drake vs. Jones, 27 Mo., 428,-431, 432 ; Hill. Inj., 23-38.)

IV. Even if Vogler had been entitled to a homestead in the premises, he could not on that account, restrain the sale under the deed of trust. The mode for designating and secur-

Vogler v. Montgomery, et al.

ing a homestead is prescribed and pointed out by statute, and if the sheriff after notice as alleged in the petition proceeded to sell notwithstanding, the injury was completed and injunction could not remedy the hurt; and if injury in fact were done him in the sale of his homestead, he had ample remedy therefor at law. But under the proof in this case, at the time of the sale by the sheriff under the first deed, the plaintiff was not entitled to any homestead in the property in controversy; because the fee title to said estate was then vested in Henry Suess by virtue of his deed from Vogler; and whatever right Nussberger acquired by said sheriff's deed passed to and vested in Shields by virtue of the deed of trust. If the conveyance by Vogler to Suess was *bona fide* and for a valuable consideration, Nussberger got nothing by his said first deed. If on the other hand the said conveyances to Suess were fraudulent and feigned as against Nussberger, he acquired an equity by his said purchase and deed which enured to the benefit of said Shields by virtue of the deed of trust; and in either case, Vogler would have no right to enjoin the sale by the trustee under said deed of trust. (Hopkins vs. Lovell, 47 Mo., 102; City of St. Louis vs. Goode, 21 Mo., 216–218.)

V. The beneficiary in the trust deed occupies the same relation under his deed of trust as if Nussberger had conveyed to him absolutely by deed; and in such case whilst Vogler, after the reversal by the District Court, would be entitled as against Nussberger, to be re-instated in whatever he had lost by reason of such irregular judgment and sale, yet Shields would hold the property unaffected by such reversal. (Lovell vs. German Reformed Church, 12 Barb., 67, 83; Newton & Clark, Exec. vs. McLean, 41 Barb., 285; Wood vs. Bank of Ky., 5 Monroe, 194; Clark vs. Hunt, 3 J. J. Marsh., 554; Bayley vs. Greenleaf, 7 Wheat, 47; Frisbee vs. Thayer, 25 Wend., 398; Washb., Real Prop. p. 89, 90. Vol. 1.)

*Johnson & Botsford*, for Respondent.

I. A sheriff's sale and deed of a homestead are void, (Beecher vs. Boldy, 7 Mich., 506; Hamblin vs. Warnecke, 31 Tex.

91; Kendall vs. Clark, 10 Cal., 17; Ackley vs. Chamberlin, 16 Cal., 181;) and the sale cannot be sustained on the ground, that the homestead exceeds the amount in value limited by law. (Meyers vs. Ford, 22 Wis., 139; Cook vs. McChristian, 4 Cal., 23.)

II. The possession by respondent and his family of the land in controversy was notice to all persons of his homestead right. (Cook vs. McChristian, 4 Cal., 23; Taylor vs. Hargous, Ib., 268; Holden vs. Pinney, 6 Cal., 234); and no act on his part was necessary to secure such right. (Wagn. Stat., p. 697, § 1; Pardee vs. Lindley 31 Ill., 187.)

III. A conveyance of a homestead without a removal therefrom by the owner and family, does not constitute an abandonment of the homestead; and respondent having taken a conveyance back from Suess, did not lose his homestead as against the appellants, by his deed to Suess. (1 Wagn. Stat., p. 699, § 8; Tumlinson vs. Swinney, 22 Ark., 400; Morgan vs. Stearns, 41 Vt., 398; Locke vs. Rowell, 47 N. H., 46; 1 Am. Law Reg. [N. S.], 706-711-712; Fishback vs. Lane, 36 Ill., 437; Ives vs. Mills, 37 Ill., 73; Moore vs. Dunning 29 Ill., 130; Lamb vs. Shays, 14 Iowa, 570; Dearing vs. Thomas, 25 Ga., 224; Cox vs. Wilder, 2 Dill. C. C. 45; Rix vs. Capitol Bank, Ib., 367; Bartholomew vs. West, Ib., 290, in which Judge Dillon construes our Missouri Statute.)

IV. A sale by Montgomery would draw a hurtful cloud over respondent's title, and the court below therefore had jurisdiction to restrain such sale, or to give such other relief as the case might require. (Hill. Inj., 550; Kerr's Inj. in Eq., 597; 1 Sto. Eq. Jur., [10 Ed.,] §§ 698-700; Scott vs. Onderdonk, 4 Kern., 9; Petit vs. Shephard, 5 Paige Ch., 492; Gamble vs. St. Louis, 12 Mo., 617; Lockwood vs. St. Louis, 24 Mo., 20; Fowler vs. St. Joseph, 37 Mo., 240; McCormick vs. Fitzmorris, 39 Mo., 24; Wright vs. Christy, Ib., 125; Winn vs. Cory, 43 Mo., 301; Leslie vs. St. Louis, 47 Mo., 479; McPike vs. Pen, 51 Mo., 63; Merchants' Bank vs. Evans, Ib., 345; Clark vs. Cov. Mut. Life Ins. Co., 52 Mo., 272.)

V. A court of equity will moreover protect a homestead. The homestead right is one resting wholly in *parol* and is a fact *in pais* and cannot be created or manifested under our statute by any record evidence or notice; and while a judicial sale of a homestead is clearly void, it is believed that this is the more appropriate form of action in which to raise and decide such invalidity than in an action at law, such as ejectment and the like. See Conklin vs. Foster, 57 Ill., 104, in which it is held that a sale of the homestead draws a cloud over the title.

NAPTON, Judge, delivered the opinion of the court.

This was an application for an injunction to restrain Montgomery, a trustee in a deed of trust from Nussberger, for the benefit of Shields, from selling the lot conveyed in the deed, on the ground that such sale would cast a cloud on the title of plaintiff.

The facts appear to be as follows: Vogler, acquired the lot and house in the year 1865. Nussberger, obtained a judgment against Vogler about the 4th of Feb., 1868. A few days previous to this Vogler conveyed the premises to one Suess, and on Jan. 23, 1869, Suess conveyed back the same to Vogler. On Nussberger's judgment an execution issued; the lot was sold under it, and Nussberger became the purchaser, and a deed from the sheriff to him was executed, bearing date August 6th, 1868, and recorded Nov. 6th, 1868.

There was a mistake in the description of the boundaries of the lot in this deed, as there was in the deed by which it was acquired by Vogler, and a second execution was obtained and levied on the lot, and a sale made under it to Nussberger, who received a second deed from the sheriff, dated 20th of August, 1869, with a correct description of the boundaries of the lot.

At or previous to this second sale the sheriff was notified that Vogler claimed this lot as his homestead. No claim had been asserted in the first sale under execution. Vogler was married and had four children, and he and his family lived on the premises.

The judgment under which these sales were made was reversed on the 24th of Dec.,1869. The deed from Nussberger to Montgomery, for the benefit of Shields, was made on 16th of Dec., 1869.

The petition in this case sets forth these facts and asks an injunction to prevent Montgomery from selling under his deed of trust.

The principal grounds on which an injunction is asked are : First, that the reversal of the judgment destroyed the title of Nussberger under the execution sales, and, secondly, that Vogler's claim of the property as a homestead rendered the sale, and purchase of Nussberger a nullity; and these are the only questions of importance, whether it be held that it was a case for injunction or not.

There is no question that a reversal of a judgment does not invalidate sales under executions to strangers who purchase at the sale, but as to parties to the judgment the law seems to be settled otherwise ; and if they become purchasers they take a title subject to the ultimate disposition of the case. In this case the plaintiff in the judgment buys and of course his title is affected by the infirmity, but he conveys to a third person before the judgment is reversed and the question is whether this infirmity attaches to the purchaser. In Gott vs. Powell, (41 Mo., 420,) the court excepted the case where some third person has acquired a "collateral right before reversal." The purchaser in such cases must be regarded as a purchaser without notice, since he buys from a party who derives title from a judgment and execution valid at the time, and really occupies the same position as if he had himself bought at the sheriff's sale. Whilst therefore the title of the plaintiff in the execution would be annulled by the reversal of the judgment, the sale or conveyance by the plaintiff to a third person before the reversal of the judgment would be valid, and the purchaser, supposing the purchase to be in good faith, would be protected from the risks which his vendor would be subject to. In this case the deed to Montgomery was made four days before the reversal of the judgment under which Nussberger

bought, and so far.as this point is concerned he must be re-garded as having acquired a good title.

But it is further objected that the sheriff's sale was void be-cause of the property being claimed as a homestead and there-fore protected from execution by our statute on that subject.

The construction of our homestead laws, (1 Wagn. Stat., p. 697,) has never so far as I have observed been before this court; so that we are left to resort to the general practice of all courts in construing obscure or doubtful provisions of a statute to carry out as nearly as possible what is believed to be its main scope and design, and in this we may be guided to some ex-tent by adjudications in other States where similar laws have long existed. It seems to be well settled in the various courts in States where the homestead law has been discussed, that such laws, being prompted by benevolent intentions, are to be liberally construed and in such way as to promote the design of securing to a family a home protected from the creditors of the person who is its head.

It is easy to foresee or imagine cases in which the minister-ial officers who are to be governed by it would be greatly em-barrassed in regard to their duty in executing some of its pro-visions, but I do not propose to anticipate difficulties which may not occur or which future legislation may remove.

The points which arise on the present record have been mostly passed on by courts of the last resort in the States having similar statutes to ours.

Our statute limits the homestead in Sedalia, where this case originated, to thirty square rods of ground in extent and in value not to exceed fifteen hundred dollars. The second sec-tion of the act allows the housekeeper or head of the family in cases where the limitation is exceeded either as to quantity or value, to designate or choose such part as will not exceed the limitation, and provides that where there is such desig-nation or choice, or where there is none made, in either event the sheriff shall appoint three appraisers to fix the boundaries and location of the homestead, and that the sheriff shall *then* proceed with the levy of the execution on the residue of the

real estate. We infer from this section that in a case where a homestead is claimed, the sheriff cannot proceed with the levy until he has thus appointed appraisers; nor does it seem to be material whether the housekeeper or the head of the family asserts his claim or not. It may be that he is absent. This law is for the benefit of the family, the wife and children as well as the head of the family. The occupancy of the house as a family residence is a fact easily ascertained by the officer. He cannot proceed with his levy until he has ascertained, in the mode directed by the act, the extent and the value of the premises, and that they are beyond the limit protected against executions.

The question of the title, we suppose, was not to be investigated by the sheriff. If the householder had no title, the execution and levy were of course unavailing, and the law was designed to protect his possession. If however there was merely an incumbrance on the property, the third section of the act directs how that is to be considered.

In this case it appears that Vogler, had, prior to the levy, conveyed his title to the premises to one Suess, and upon this ground it is claimed that he forfeited all the protection which the homestead law gives. If this conveyance was in good faith, and valid, then it is obvious that an execution and a sale under it would convey nothing; but if it was fraudulent, as it doubtless was claimed to be by the execution creditor, then the title was in Vogler, and the homestead law exempted it from execution. It appears to be the received opinion that neither a fraudulent conveyance nor an act of bankruptcy on the part of the head of the family will produce a forfeiture of the benefits of the homestead exemption. (Cox vs. Wilder, 2 Dillon, C. C. 46.) Judge Dillon thinks these laws are chiefly for the benefit of the family, and therefore will not allow the fraudulent acts of the head of the family to subvert the policy of the law, and this opinion was upon our Missouri Statute.

As Nussberger then, derived no title from either execution, levy or sale, he could convey none to Montgomery, and the proposed sale by Montgomery, would convey no title.

And this is urged as a reason why no injunction should be allowed.

But it is the true policy of courts to prevent litigation, and a sale by the trustee would undoubtedly cast a cloud over plaintiff's title, and embarrass a sale, if he desired to sell.

The judgment is affirmed with the concurrence of the other judges.