THE STATE OF MISSOURI to use of CHRIS. NIEMAN, Respondent, v. WM. F. KOCH *et al.*, Appellants.

40  635
41  642

40  635
44  468

40  635
46  534
46  673

40  635
47  270

40  635
51  541

40  635
56  330

40  635
57  25

### St. Louis Court of Appeals, April 22, 1890.

1. **Evidence:** DEBTOR AND CREDITOR. Parol evidence is not admissible as between a debtor and an attaching creditor to show that an absolute bill of sale, given by the former to a third person for personal property levied upon, was in fact given as security for indebtedness to such third person.

2. **Exemptions:** FRAUDULENT CONVEYANCES. If personal property be sold to defraud creditors of the vendor and be thereafter levied upon by such creditors, the vendor is not entitled to claim the same as exempt, if it was not of a kind specifically exempted by statute, and if it is not affirmatively shown that it constituted all the property owned by the debtor at the time of sale, and that it was exempt because less than three hundred dollars in value.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Haeussler & Hezel,* for the appellants.

*Christian & Wind,* for the respondent.

ROMBAUER, P. J., delivered the opinion of the court.

An opinion was filed in this cause April 1, 1890, and a judgment entered reversing the judgment of the trial court, and remanding the cause for new trial. Since the opinion was filed, counsel for the respondent has filed a motion for rehearing, in which, with more zeal than discretion, he criticises our discussion of the law and facts of the case. As some of the questions arising upon the record have never been directly passed upon by any court of final judicature in this state, we have concluded to file this opinion in lieu of our original

opinion in the cause, and thus dispose at once of all points made by the respondent, both in his original brief, and in his brief upon the motion for rehearing.

The action is one against a constable and the sureties on his official bond for a wrongful sale of plaintiff's goods, which the plaintiff claimed were exempt from levy and sale. The answer states that the property, levied on and sold, was not property specifically exempt by statute, and had been prior to the levy and sale conveyed by the plaintiff in fraud of his creditors, and that the plaintiff, at the time of the levy and at all times thereafter, denied that he was the owner of the property.

The plaintiff recovered judgment in the trial court for the value of the property sold by the constable. The defendants assign for error that the court admitted illegal evidence against them, and erred in its instructions to the jury.

The property in controversy consisted of a stock of groceries, worth about three hundred dollars, which was contained in a store run by plaintiff. It did not appear whether it was all the property owned by the plaintiff or not. The plaintiff was the head of a family. He testified that he was not in the store when the levy was made, but that subsequently he went to the constable with his attorney and claimed the goods as exempt from attachment. On cross-examination the plaintiff admitted that he told the constable prior to this claim that he had made a bill of sale of these groceries to one Rupenthal, but that he did not remember whether he told the constable at the same time that he could not claim any exemptions in the goods, as they were not his. Neither did the plaintiff remember whether he had sworn on a former trial of the cause that he did not own the goods at the date of the levy, and, therefore, could not claim any exemptions.

The court did not permit the plaintiff on his cross-examination to state the contents of the bill of sale,

but, on his re-examination, it permitted the following questions to be put to him by his counsel :

"*Q.* What passed between you and Rupenthal?" To which the plaintiff answered : "Well, I gave Rupenthal a bill of sale because I owed him a little bill, to secure himself.

"*Q.* How much did you owe Rupenthal?" To which the plaintiff answered : "I owed Rupenthal twenty-five dollars.

"*Q.* Was the amount the only consideration paid you for this paper?" To which plaintiff answered, "Yes, sir."

The plaintiff's counsel testified that, prior to the sale, he gave to the constable a written notice on behalf of the plaintiff, stating that the plaintiff was the head of a family, and, as such, entitled to exemptions under sections 2343 and 2346 of the statutes, and demanded that the same be set aside to him ; that the constable looked over the paper and said : "He is not entitled to anything, he has sold it;" and that he, the counsel, thereupon replied : "I know all about that sale, it don't amount to anything ; you know, yourself, that the sale don't amount to anything ; what we claim is that this property is exempt from execution, and demand that it be set aside to him." There never was any delivery to Rupenthal, or change of possession, nor did it appear that the paper given to Rupenthal was ever recorded. This, and evidence showing the value of the property, was all the evidence adduced by plaintiff, whereupon the defendants, by instruction, demurred to the evidence, and, upon the court refusing the instruction, gave evidence tending to show the facts stated in their answer.

The court erred in permitting the plaintiff to give oral evidence of the contents of the bill of sale, and evidence of what its consideration was ; but, even if all this testimony had been properly admitted, we

still think the defendant's demurrer to the evidence should have been sustained, as plaintiff's own evidence does show that he had parted with the title to the goods prior to the levy, and does not show, as plaintiff's counsel argues, that he was a mortgagor in possession. Assuming that such a fact could be shown, this court has, in effect, decided that, although a sale of personalty, which is in fraud of creditors, may be avoided by the creditors of the vendor, yet the vendor himself cannot avoid it for the purpose of claiming the statutory exemption in such personalty. *Alt v. Bank*, 9 Mo. App. 91. That proposition was decided on full consideration, and there is no decision in this state which militates against it. Where property is either specifically exempt by statute, or has, by claim duly made, acquired the status of exempt property, there can be no conveyance of it in fraud of creditors. That was expressly decided in *Kulage v. Schueler*, 7 Mo. App. 250, and reiterated in *Weinrich v. Koelling*, 21 Mo. App. 133, 135, and *Stotesbury v. Kirtland*, 35 Mo. App. 157. The same position is taken in *Hombs v. Corbin*, by the Kansas City Court of Appeals, on the second appeal of that case, 34 Mo. App. 393. The cases which hold that property exempt as a homestead cannot be conveyed in fraud of creditors rest on the same principle, because the homestead is specifically exempt. *Vogler v. Montgomery*, 54 Mo. 577; *State ex rel. v. Diveling*, 66 Mo. 375; *Davis v. Land*, 88 Mo. 436.

In the case at bar, the property was not specifically exempt. Under the cases above cited, the plaintiff might have claimed it after it was levied on, if it was still his property, and, after making such claim, might have sold it as exempt property; but, before the claim, it was subject to levy, as all other property of the plaintiff not specifically exempt. The mere fact that the sale to Rupenthal was fraudulent as against the creditors of the plaintiff did not put the plaintiff in a

position to avoid that sale, and claim the property as his own. The sale, although voidable by creditors, was valid as against the plaintiff.

This disposition of the case is challenged by counsel for plaintiff as not borne out by the facts shown by the record, and as erroneous in law. We are first told that there is no evidence in the case of a sale of the goods by the plaintiff to Rupenthal. On that subject the plaintiff testified :

"*Q.* Didn't you tell him (the constable) that you had sold it (the property); that you did not own it any more; it belonged to Mr. Rupenthal? *A.* That I gave him a bill of sale, yes, sir.

"*Q.* You told the constable that you had given a bill of sale to Rupenthal, and did not own the things at all, did you? *A.* *I don't know* that I told him I did not own it. I told him I had given a bill of sale to Rupenthal."

A bill of sale is a formal instrument for the transfer of goods and chattels (see Webster's dictionary), or an instrument evidencing the transfer of title to personalty (Anderson's law dictionary); and there is absolutely nothing in the case even tending to show that the plaintiff used, or intended to use, the term in any other sense than the one which it bears in common parlance as a law term, and in the sense in which it is used alike constantly by merchants and courts. The plaintiff's counsel himself testifies that, when told by the constable that his client had sold the goods, he told the constable, in his client's presence, "I know all about that *sale*, it don't amount to anything; you know, yourself, that the *sale* don't amount to anything." The only reasonable inference from this is that the *sale* was a sham, and not that it was some other transaction than a sale.

But the plaintiff's counsel maintains that the evidence elicited by him from his client, that the only

consideration for the transfer to Rupenthal was twenty-
five dollars, which his client owed Rupenthal, had a
tendency to show that this instrument was a mere
mortgage, and that it is always competent to show by
parol that a conveyance absolute upon its face was a
mere mortgage. That argument completely miscon-
ceives both facts and law. Since there was no evidence
in this case that the property had been delivered to
Rupenthal, or that the instrument was recorded, a
mortgage would have been equally as fraudulent as an
absolute sale.

On the other hand it is a novel and somewhat start-
ling proposition that an instrument, absolute on its
face, may be shown to be a mortgage by parol evidence
as to innocent third parties. If such were the law, our
registry laws would afford but little protection. The
doctrine, that a conveyance absolute upon its face may
be shown by parol evidence in a controversy *between the
parties to the instrument* to have been executed as a
mere security for debt, is a mere creation of equity
(1 Jones on Mortgages [4 Ed.] sec. 282), and it has been
formerly held in this state that such fact could not be
shown even between the original parties in an action at
law (*Hogel v. Lindell*, 10 Mo. 483), although *Wood
v. Matthews*, 73 Mo. 481, seems to hold that it may be
shown in an action at law, the court relying for its rul-
ing on the authority of *Johnson v. Huston*, 17 Mo. 58,
which was a suit for relief, and therefore, in the nature
of a bill in equity. As this, however, was not a contro-
versy between the parties to the instrument, the entire
inquiry was foreign to the issues.

The plaintiff further contends that our decision is
opposed to *Paddock v. Lance*, 94 Mo. 285. In that
case the debtor had fraudulently conveyed some prop-
erty, which was shown to have been all the property he
had, save some household goods *of the value of about
twenty dollars*. A creditor levied on the property

fraudulently conveyed, bought it on execution, and brought suit to set aside the sham conveyances. The trial court set aside the sham conveyances, but also set aside the execution sale on the ground that the property was all the debtor had, and the sheriff had failed to notify him of the exemptions. The supreme court set aside the judgment of the trial court on the ground that the issues framed by the pleadings did not justify the setting aside of the execution sale, and added that, "as the respondents have made no appearance here, we will not attempt to say what relief they may have on proper pleadings, with proof to sustain them." The case at most contains an intimation, that, if the property fraudulently conveyed by the debtor was *all* the property he had, he *might possibly* claim his exemptions, after the sale is vacated for fraud. As the facts in this case present no such issue, we can only do as the supreme court did, and decline to express an opinion of what the remedy of the debtor is in a case which does present such facts.

We are aware that exemption laws are not for the benefit of the debtor alone, but mainly for that of his family, and should receive a liberal construction. We see no reason, however, for giving them a construction, by which provisions intended for a shield or protection should be turned into a sword of offense. If a debtor conveys property, however small, to another in fraud of his creditors, he can neither in law or equity set up the fraud against his grantee, and thereby avoid the conveyance, and that his family may suffer in consequence is of no avail. Yet he asks us to do that against an innocent creditor in this case, which he cannot do against a fraudulent grantee, because, against the fraudulent grantee, he could not even show that the conveyance absolute on its face was a mere mortgage. *Hassam v. Barrett,* 115 Mass. 256. The very least that the law should demand in such a case is to require of the debtor

an affirmative showing that the property was all he had, and that, therefore, the creditor is not injured by the fraudulent conveyance, because the property was covered by the debtor's exemptions in any event.

It results from the foregoing that the judgment of reversal heretofore rendered must stand, and that the motion for rehearing must be overruled. All the judges concur.