# CASES DETERMINED

IN THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

---

**OCTOBER TERM, 1890.**

---

HENRY LINK, Respondent, v. HENRY F. HARRINGTON,.
Appellant.

### St. Louis Court of Appeals, October 28, 1890.

1. **Sales:** DELIVERY AS AGAINST CREDITORS. If a sale of chattels be constructively fraudulent as against the creditors of the vendor, the invalidity of the sale is not cured by an actual delivery of the chattels to the vendee prior to a levy thereon ; the rule that actual delivery purges a mortgage of chattels of constructive fraud is not applicable, by parity of reason, to the case of a sale.

2. **Fraudulent Conveyances:** CONVERSION OF BILL OF SALE INTO MORTGAGE AS AGAINST CREDITORS. A bill of sale, absolute upon its face. cannot, as against creditors of the apparent vendor, be shown to be a mortgage by reason of a secret understanding between the parties thereto.

*Appeal from the St. Louis City Circuit Court.*—HON
JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

(635)

*Sale & Sale*, for appellant.

(1) The testimony of plaintiff, so far as it is against himself, constitutes an admission binding on him. *Shirts v. Overjohn*, 60 Mo. 305. (2) His testimony showed that the purpose of Alexe in making the transfers was to hinder and delay his creditors, and that plaintiff not only was aware of that purpose but also, by a pretended claim to ownership of goods belonging to Alexe, actively assisted Alexe in carrying out that purpose. Such a transfer is fraudulent and void as to creditors. *Shelley v. Boothe*, 73 Mo. 74; *McNichols v. Rubelman*, 13 Mo. App. 515; *Kuykendall v. McDonald*, 15 Mo. 416; *Potter v. McDowell*, 31 Mo. 62; *Arnholt v. Hartwig*, 73 Mo. 485. (3) Plaintiff's testimony further shows that in the conveyances to him a use was reserved to the grantor Alexe. It was agreed that any surplus after paying the Schnaider Brewing Company's debt was to be paid to Alexe; also that, notwithstanding the transfer, if Alexe could find a purchaser, plaintiff would turn over the property to such purchaser and pay Alexe a commission. These agreements constituted a use in the grantor and rendered the transfer void. R. S. 1889, sec. 5169; *Smith v. Craft*, 12 Fed. Rep. 856; *State to use v. Jacob*, 2 Mo. App. 183; *Bullene v. Barrett*, 87 Mo. 185; *Hisey v. Goodwin*, 90 Mo. 366; *Mfg. Co. v. Steele*, 36 Mo. App. 496; *State to use v. Bell*, 2 Mo. App. 102; *Sibley v. Hood*, 3 Mo. 206. The absence of an actual delivery for six days rendered the transfer void. R. S. 1889, sec. 5178; *Wright v. McCormick*, 67 Mo. 426; *Stewart v. Nelson*, 79 Mo. 524. Nor was such sale validated by delivery before the levy of the attachment writ in favor of Lapp, Goldsmith & Co. *Franklin v. Gummersell*, 9 Mo. App. 84; s. c., 11 Mo. App. 306; *Cabanne v. Bay*, 10 Mo. App. 594; *Moser v. Claes*, 23 Mo. App. 429; But see, *contra*, *McIntosh v. Smiley*, 32 Mo. App. 125.

*H. A. Haeussler* and *Cecil V. Scott,* for respondent.

( 1 ) Where a mortgagee of a stock of merchan-- dise takes actual possession of the same, prior to a levy of an attachment by another creditor of the mortgagor, for the purpose of securing a debt due him, and con- tinues to hold the actual possession up to the time of the attachment levy, he will be protected and will hold the property against the attaching creditors, and it is immaterial that the mortgage for any reason was void, except as between the parties. *Nash v. Norment,* 5 Mo. App. 545 ; *Greeley v. Reading,* 74 Mo. 309 ; *Petring v. Chresler,* 90 Mo. 649. ( 2 ) Respondent having as the representative of the brewing company taken actual possession of the goods in question, for the purpose of securing Alexe's debt to the brewing company, and held such possession up to the time of the levy, under the attachment, it is wholly immaterial whether there were any prior mortgages or bills of sale between Alexe and the brewing company. *Greeley v. Reading, supra ; Petring v. Chresler, supra.* ( 3 ) Link became the trustee of an express trust in favor of the brewing company, as respects the property in question. The surrender by Alexe was to him, and in his name, for the benefit of the brewing company. A recovery by him would bar the brewing company. A mere naked deposi- tory of the legal title, without beneficial interest, is endowed with rights, as the real party in interest, and clothed with the attributes of a trustee of an express trust. This doctrine is fully supported by the follow- ing cases. *Beattie v. Lett,* 28 Mo. 596 ; *Nicolay v. Fritschle,* 40 Mo. 67 ; *Snider v. Express Co., supra ; State ex rel. v. Horn,* 94 Mo. 162 ; *Buddington v. Masbrook, supra.*

ROMBAUER, P. J.—An opinion was filed in this cause at the last term of court, leading to an affirmance of the judgment in favor of plaintiff rendered by the

trial court. Upon a re-examination of the question on a motion for rehearing, we entertained doubts on the proposition, whether the declaration of law made by the trial court, when applied to the facts of this case, and considered with regard to the effect upon the rights of the defendant, was not prejudicially errone- ous; hence we concluded to re-examine the question, which we have done with the following result:

The facts disclosed by the record, briefly stated, are as follows: Prior to and up to November 12, 1885, one Alexe, a hotel and saloon-keeper, was indebted to the Joseph Schnaider Brewing Company (hereinafter for brevity's sake named the brewing company), on various mortgages in the sum of two thousand dollars, and more. These mortgages were duly recorded, and cov- ered the saloon and hotel fixtures, and all other personal property in Alexe's hotel and saloon. It is substan- tially conceded that they were fraudulent against Alexe's creditors, as far as they affected the stock in trade, since all the testimony concedes that Alexe was to continue, and did in fact continue, to carry on the saloon and sell its wares in the usual course of trade. In other respects no serious question is raised as to their good faith, and the testimony tends to show that they were executed for full value received.

On or about November 12, 1885, Alexe became fur- ther indebted to the brewing company for moneys advanced, but the exact amount thus advanced is left in doubt by the evidence. On the last-named day he executed a note to the brewing company for seven hun- dred and fifty dollars, payable one day after date, and secured by a chattel mortgage on a specified lot of whiskeys, not in the saloon, and on all other personal property on the premises. He also executed a bill of sale to the plaintiff Henry Link (who, at that time, was in the employ of the brewing company), conveying to him, for a stated consideration of two hundred and fifty

dollars, the household goods and furniture on the premises, and wines and liquors in the saloon, enumerated in a schedule attached to the bill of sale, such wines and liquors forming part of the property subsequently levied on by the defendant, as sheriff, under an attachment against Alexe and in favor of Lapp, Goldsmith & Co. No open possession was taken under either of these instruments, either by the brewing company or the plaintiff, for six days after November 12, when the last of them were executed. On November 18 an execution against Alexe was levied on part of the property, and the plaintiff thereupon put his own agent in possession of the residue on the same day. On November 19, Alexe executed a further bill of sale to the plaintiff for the stated consideration of fifty dollars, conveying to the plaintiff everything in the saloon and hotel, which had already been covered by the former conveyance to him; and the plaintiff thereupon took open and notorious possession of the property. At a subsequent hour of the same day, the execution in favor of Lapp, Goldsmith & Co. was levied by the defendant sheriff upon the goods in controversy, and the brewing company thereupon instituted in plaintiff's name the present action of replevin against the defendant sheriff.

There is evidence in the record tending to show that the bill of sale of November 12 was executed for the purpose of enabling the plaintiff, on behalf of the brewing company, to take immediate possession and complete control of the property, in case of an interference with it by Alexe's creditors—in brief, that it was the understanding of the parties that, notwithstanding this bill of sale, Alexe should still carry on the saloon in the usual course of trade. Such an understanding would make the instrument fraudulent in law, as being for the grantor's use.

This being in substance all the evidence bearing on the question of law raised by the declaration of the

court, we proceed to set out the declaration complained of, which is as follows :

"The court declares the law to be that, while a debtor has the right to transfer his property, or any part thereof, to one of his creditors in payment of a just debt to the exclusion of his other creditors, yet such transfer must be made in good faith for that purpose only, and he will not be permitted in such disposition of his property to reserve to himself any benefit or secret use thereof. If, therefore, the court believes from the evidence that Frank Alexe, under pretense of preferring plaintiff as a creditor, transferred to him the goods in controversy under an agreement with plaintiff Link that, after plaintiff has paid himself or received payment out of the goods so transferred, the remainder of such goods, or the surplus left after payment of plaintiff's debt, should be turned over to said Alexe, then such transfer is altogether void, and judgment must be for the defendant, *if made on the part of Link with any intent to hinder, delay or defraud other creditors of Alexe otherwise than as a mere incident to a preference over them, or with notice or knowledge of such intent on the part of Alexe subject to the like qualification.*"

Objection is made to that part of the above declaration which is placed in italics.

It will be seen at a glance that, if this declaration means what its language seems to import, it is unquestionably erroneous. It confounds fraud in law with fraud in fact, and declares in substance that, unless the court finds that the disposition made of the property was fraudulent in fact against the vendor's creditors, it is immaterial whether or not it was fraudulent in law. A conveyance to the grantor's use is fraudulent against his creditors, regardless of the intention or motive of the parties to the transaction.

The plaintiff contends that this error was harmless, because, though all the instruments preceding in date

the one of November 19 were fraudulent to the extent of affecting goods in trade, yet, as it appears by the uncontroverted evidence that prior to the levy, under which defendant claims, a delivery of the goods to plaintiff had taken place, such delivery purged the transaction of fraud and made the plaintiff's title good. This contention loses sight of two controlling propositions. *First*, the plaintiff is bound to maintain his title, if at all, under one of the bills of sale. These are all the muniments of title he has. The antecedent mortgages to the brewing company are evidence in the case only as affecting the good faith and consideration of the subsequent bills of sale. The brewing company, and not Link, would be the proper party plaintiff in this case, if title to the goods were sought to be supported under the mortgages. It is because the bills of sale were made to Link, although made for the benefit of the brewing company, and because of that fact alone, that he is trustee of an express trust, and can maintain this action in his own name. *Next*, it is an error to suppose that the rule laid down in *Nash v. Norment*, 5 Mo. App. 545, and followed by the supreme court in *Greeley v. Reading*, 74 Mo. 309, and subsequent cases, declaring that a *mortgage* is purged of its fraud by subsequent delivery, can be extended to *sales* of personal property. Delivery and change of possession are essential ingredients of every sale when it is sought to uphold it against the creditors of the vendor, and to hold that delivery at any time prior to the seizure of the goods by the vendor's creditors is sufficient would, in effect, wholly abrogate the statute on the subject of fraudulent conveyances.

On the other hand, it is equally erroneous to suppose that the bill of sale of November 12 can be upheld on the theory that, by some secret understanding between Alexe and the plaintiff, it was in effect a mortgage only, although absolute on its face. That such cannot be

done as against the grantor's creditors, is fully demonstrated by the clear and convincing argument of Judge LEWIS in *State to use v. Bell,* 2 Mo. App. 102, and we have recently had occasion to reaffirm the proposition in *State to use v. Koch,* 40 Mo. App. 635.

It is thus shown that the defendant's complaint is just; that the declaration of law made by the court, and hereinabove recited, was erroneous and prejudicial to him,—in brief, that the court did not apply the law correctly to the hypothetical facts. Under the facts shown by the record before us, the validity of the plaintiff's title rests on the validity of the sale made November 19 as against creditors of the vendor. The validity of that sale must be determined by the fact, whether under all the circumstances it was made in good faith and supported by an independent, adequate consideration. If such consideration moved from the brewing company, and the plaintiff merely held the legal title for its benefit, he became a trustee of an express trust, and could, as such, maintain this action; hence we deem untenable the objection that the plaintiff has shown no cause of action as a matter of law.

All the judges concurring, the judgment is reversed and the cause is remanded to be proceeded with in conformity with this opinion.