FRANK K. GREEN, Respondent, v. WILLIS M. BAX-
TER, Appellant; FRED RIEFESEL, Respondent.

**St. Louis Court of Appeals, January 21, 1902.**

Exemption: STATUTORY CONSTRUCTION. Where a judgment
debtor owned none of the articles enumerated as exempt from execu-
tion in the first and second subdivisions of section 3159, Revised
Statutes 1899, and no personal property at all except a demand which
had been put into judgment for less than three hundred dollars, and
had assigned said judgment to a third party, reserving a residuary
interest therein, the assignor may claim his residuary interest in
such assigned debt as exempt from execution, although the assign-
ment would have been constructively fraudulent as to creditors if
the assignor had owned personal property to an amount in excess
of what the statute declares to be exempt.

Appeal from Hannibal Court of Common Pleas.—*Hon. D. H.
Eby,* Judge.

REVERSED AND REMANDED.

*John L. RoBards* for appellant.

(1) The evidence indubitably proves that Willis M.
Baxter was a citizen of Hannibal, Missouri, the head of a
family, that he had none of the property described in subdi-
visions 1 and 2, in section 3159, Revised Statutes 1899, no
real estate, and that his entire personalty was less than $300;
that the assignment to RoBards was as collateral security for a
valid indebtedness, money loaned and meritorious legal serv-
ices, that neither party contemplated acting under the assign-
ment as vesting an absolute property in RoBards. No new
credit or debt was created after the judgment—that Riefesel's
judgment was on a pre-existing debt. The assignment nowise

affected the right of a creditor. That under section 3162 of the statutes, Baxter duly claimed on September 5, 1900, the fund of $77.80 in the hands of the constable, Green, as exempt from garnishment; demanded its release; that at no time did the constable set off to him his exempt property or notify Baxter of his exemption rights. State v. Barada, 57 Mo. 562; State v. Romer, 44 Mo. 99. (2) The statute is efficacious so that Baxter is entitled to hold that sum of $77.80 exempt from any legal process. State v. Farmer, 21 Mo. 160. "Under section 2346 (Rev. Stat. 1899, secs. 3159, 3162, 3163), he was clearly entitled to hold exempt any other property real or personal, not exceeding three hundred dollars in value. It was the plain statutory duty of the officer to notify him of his right of exemption, and selection under those sections." Paddock v. Lance, 94 mo. 283; Bovard v. Railway, 83 Mo. App. 498; Day v. Burnham, 82 Mo. App. 538. "This right of selection (as well as other provisions of this homestead law mentioned later) can not be reconciled with the idea that as against the debtor," etc. Macke v. Byrd, 131 Mo. 682-9; State v. Beamer, 73 Mo. 37; Marchildon v. O'Hara, 52 Mo. App. 523; Wagner v. Furniture Co., 63 Mo. App. 206; State v. Kutzenborn, 2 Mo. App. 335-8. (3) There can be no fraud committed by a debtor against a creditor in the disposition of his exempt property not subject to execution. Whatever is permitted by the law is not fraud. A creditor has no interest whatever in the exempt property of his debtor. State v. Bragg, 63 Mo. App. 22; Osborn v. Schutt, 67 Mo. 712; Nat. Tube Co. v. Machine Co., 118 Mo. 365; Kiely v. Hickok, 70 Mo. App. 617; Bank v. Worthington, 145 Mo. 91; Schroeder v. Bobbit, 108 Mo. 289; Sexton v. Wheaton, 8 Wheaton, 229. "No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property, out of which he has a specific right to be satisfied, is withdrawn from his reach by a fraudulent conveyance." Wait on Fraudulent Conveyances, secs. 52, 73, 347; Bump on Fraudulent

Conveyances, secs. 535, 538; Shoe Co. v. Arnold, 82 Mo. App. 1-9.

*M. Lester Farres* for respondent.

(1) There was no error in the finding and judgment of the court. A court sitting as a jury, where no declarations of law are asked or given, will be affirmed on appeal if it can be done on any theory applicable under the proof. Tombs v. Basye, 65 Mo. App. 30; Wheeler v. McDonald, 77 Mo. App. 213. It has been repeatedly held, under the present practice act, that where the court trying the issues of fact sits as a jury and gives a general verdict, the only way in which errors can be corrected if the court decides erroneously, or makes a misapplication of the facts under the law, is to ask instructions. Riffe v. Railroad, 72 Mo. App. 222. (2) Appellate court will assume the facts to be as found by the trial court, when such court is intrusted with both facts and law. Sinclair v. Railroad, 70 Mo. App. 588; Grimes v. Fender, 82 Mo. 497. (3) A debtor in failing circumstances, unable to meet his debts as they become due, and who is being pressed for payment he is unable to meet, can not make a voluntary deed to his property. A deed made under such circumstances is fraudulent, as to existing creditors, regardless of the intent with which made. (4) Nothing can be secured to an insolvent debtor as against his creditors, and while one buying property in good faith may do with it as he pleases, he can not so manipulate it, though bought by himself, that it may inure to the benefit of an insolvent debtor. Monarch Rubber Co. v. Bunn, 78 Mo. App. 55; McNichols v. Rubleman, 13 Mo. App. 515; Bank v. Powers, 134 Mo. 432. (5) It is not necessary under the statute aforesaid (R. S. 1899, sec. 3404), that there be a fraudulent purpose in keeping the mortgage off the record. The statute requires no such condition, but if it did, the intent would be presumed, since in law a man is presumed to intend

the natural consequences of his acts.   Landis v. McDonald, 88 Mo. App. 335.   (6) The fact that the creditor may, subsequent to the origin of his debt, receive notice of a secret mortgage, will not destroy his rights which accrued prior to the notice.   Landis v. McDonald, 88 Mo. App. 335.   (7) As to property sold in fraud of creditors of vendor and thereafter levied upon by a creditor, the vendor is not entitled to claim the same as exempt if not the kind of property specifically exempt by statute.

## STATEMENT OF THE CASE.

The appellant, Willis M. Baxter, borrowed of John L. RoBards twenty-two dollars, depositing with him as collateral security for that loan and for legal services to be rendered by said RoBards, a promissory note on Isaac M. Barkley.   This occurred in October, 1898.

An action was afterwards begun on said note in Baxter's name, which resulted in a judgment in the Hannibal Court of Common Pleas on the ninth day of May, 1900, against Isaac M. Barkley and Hulda C. Barkley, his surety, on an appeal bond (the case having been appealed from the justice of the peace before whom it was instituted), for two hundred and forty-three dollars.   A stay of execution was granted until the first day of September, thereafter.   On May twelfth, said judgment was assigned by Baxter to RoBards by a writing in the statutory form, attested by the clerk of the court, which assignment was attached to the record.   RoBards and Baxter made an agreement in writing the same day which recited the judgment was assigned to the former as collateral security for the loan aforesaid, and for fees which might become due for RoBards' legal service in collecting the note.   This writing was not attached to the record of the judgment nor to the assignment thereof.

Riefesel recovered judgment the fifth day of June, 1900,

before a justice of the peace against Baxter for seventy-two dollars and eighty cents and an execution was issued thereon the same day and delivered to respondent Green, who was the constable of the township. He summoned Isaac M. Barkley as garnishee, on the twenty-ninth day of August, to appear before the justice on the eighth day of September to answer such interrogatories as might be put to him. Farris was Riefesel's attorney in the action against Baxter and on the twenty-ninth day of August, but after the garnishment writ had been served on Barkley, RoBards informed Farris that his (RoBards') interest in the judgment of Baxter against Barkley for the sum of two hundred and forty-three dollars did not exceed seventy dollars and that the balance belonged to Baxter.

The trial court found this was the first intimation either Riefesel or his attorney, Farris, had that the assignment by Baxter to RoBards of the last-mentioned judgment was to the secret use and benefit of Baxter for about the sum of one hundred and seventy-three dollars.

Barkley answered as garnishee on the day he was summoned, stating that he owed Baxter at the time of the garnishment two hundred and forty-three dollars on said judgment in the court of common pleas which he was informed RoBards claimed to own an interest in by assignment, amounting to seventy dollars, and that he (Barkley) was ready to pay the money due on said judgment but was prevented by the garnishment. After this answer had been filed, Baxter served a notice on constable Green that he was the head of a family and claimed the balance of the judgment against Barkley, over and above the interest of RoBards, exempt from execution and garnishment under the statutes; that he had no property in excess of the value of his exemption rights, subject to garnishment and execution, and further demanded that the judgment be released from the garnishment proceedings. The justice gave judgment in favor of Riefesel against Barkley as garnishee on the eighth day of September, for the sum of

seventy-two dollars and eighty cents and costs, and issued an execution to constable Green on that day.

Afterwards on the twentieth day of September, the sheriff of Marion county, who held the execution that had been issued on the Baxter-Barkley judgment, collected from Barkley the sum of one hundred and seventy-one dollars and eighty cents and paid the same to RoBards, who, on the next day applied fifty-six dollars and fifty cents of said amount in payment of his claim against Baxter and paid the balance to Baxter. This left seventy-seven dollars and seventy cents due still on the Baxter-Barkley judgment, which Barkley on the twentieth of September paid constable Green in discharge of his liability as garnishee under the judgment rendered against him by the justice of the peace in Riefesel's case. Riefesel claimed that sum by virtue of his judgment against Baxter as defendant and Barkley as garnishee; while Baxter claimed the same as exempt from execution. Constable Green filed a bill of interpleader in the Hannibal Court of Common Pleas, stating the conditions under which he held the fund so claimed by Riefesel and Baxter in his hands and praying he be allowed to pay the money into court and that the contending parties be compelled to interplead, in order that it might be determined who was entitled to it. It being so ordered, Riefesel and Baxter filed interpleas, setting up their respective claims to the fund which the court adjudged and decreed to Riefesel. From this judgment Baxter appealed.

GOODE, J.—No point was made by any of the parties about the propriety of this proceeding on the part of the constable, nor shall we make any. It ought to be stated there is no evidence proving or tending to prove the transaction between Baxter and RoBards, by which the former's note against Barkley was assigned to the latter as collateral security for money borrowed and legal services to be rendered, or the subsequent assignment of the judgment for the amount of said note for the same purpose, was inspired by a corrupt motive

or made for the purpose of hindering or defrauding Baxter's creditors. If the transaction was fraudulent at all, it was constructively so because the residuary interest Baxter retained, to be received by him after RoBards' claim was satisfied, was not disclosed.

The evidence shows and the court found that at the date of the assignment of the judgment to RoBards, Baxter was and ever since has been a resident of Marion county, the head of a family and that he did not own any of the articles of personal property enumerated as exempt from execution (R. S. 1899, sec. 3159) and had no personal property subject to levy at the time the execution on Riefesel's judgment was issued unless the debt in controversy was. The constable did not apprise Baxter of his exemption rights before the garnishment was served; but the latter claimed the fund impounded or attached in Barkley's hands as exempt, by a written notice served on the constable prior to the rendition of judgment against the garnishee and in ample time to protect his statutory right to the exemption. State ex rel. v. O'Neill, 78 Mo. App. 20; State ex rel. v. Emerson, 74 Mo. 607.

Riefesel contends, and the court below held, that Baxter could not claim the excess of his judgment against Barkley over and above RoBards' interest therein as exempt, because he had made a fraudulent assignment of it. It is doubtful whether the assignment to RoBards was even constructively fraudulent, and beyond doubt that it was not actually so. But putting aside the query as to whether it would have been voidable at the instance of a creditor if it had covered property in excess of appellant's exemption rights, the question that remains is, conceding for the sake of argument that it was legally fraudulent, as Baxter owned nothing else, was he not, nevertheless, entitled to claim this fund in lieu of the articles mentioned in the first and second subdivisions of the section of the statutes above cited? No court of this State, or so far as our examination has shown, of any other, has decided that

a conveyance or assignment of property made without any dishonest intention, but which the policy of the law might hold to be invalid as to creditors, precludes a debtor from claiming the assigned property as exempt if it falls within the exemptions allowed by the statutes. In some cases where property which was not specifically exempted from execution by a statutory provision, had been transferred for the purpose of defrauding creditors, the ruling was that it could not be selected by the fraudulent debtor as exempt in lieu of other property which was specially exempted. This view finds slight countenance, we think, from the decisions in our State; at least from the later and more authoritative ones, which recognize the principle that creditors have no right to complain of a disposition either voluntary or for a consideration, bona fide or fraudulent, which a debtor may make of property that could in no event be taken by them for the satisfaction of their demands.

This is the doctrine laid down in Davis v. Land, 88 Mo. 436, where the matter discussed was whether a fraudulent conveyance of a homestead could be subjected to process at the instance of a creditor of the owner. It has been followed ever since. . Bank v. Guthrey, 127 Mo. 189 ; Bartels v. Kinnenger, 144 Mo. 370.

In Bank v. Guthrey, supra, where the defendant had conveyed a farm worth fifteen hundred dollars to his daughter in consideration of her supporting him during his life, such conveyance was recognized as one that would have been invalid against creditors if the land had been subject to execution, but valid because it was a homestead. The court said: "That rule has no application to property which is exempt from seizure and sale under attachment and execution, such as a homestead. Creditors have no interest in such property, as it can not be subjected to the payment of their debts by proceeding in equity any more than it can be seized under attachment or execution."

In Vogler v. Montgomery et al., 54 Mo. 577, where the question was, whether the owner of a homestead, by conveying it prior to a levy on it, had forfeited his right to be protected from a sale which would cloud his title, it was said: "If this conveyance was in good faith and valid then it is obvious that an execution and a sale under it would convey nothing; but if it is fraudulent, as it doubtless was claimed to be by the execution creditor, then the title was in Vogler, and the homestead law exempted it from execution. It appears to be the received opinion that neither a fraudulent conveyance nor an act of bankruptcy on the part of the head of a family will produce a forfeiture of the benefits of the homestead exemption (Cox v. Wilder, 2 Dillon, O. C. 46). Judge DILLON thinks these laws are chiefly for the benefit of the family and, therefore, will not allow the fraudulent acts of the head of the family to subvert the policy of the law, and this opinion was upon our Missouri statute."

In Megehe v. Draper, 21 Mo. 510, the defendant had caused certain property of the plaintiff to be seized on execution which the plaintiff claimed was exempt to the value of one hundred and fifty dollars, but the defendant caused it to be sold and on being sued for that act, defended on the ground that the plaintiff had other property not exempt from execution which he had concealed from the officer so as to prevent it from being seized. This defense proved unavailing, the court holding in effect that the merits or demerits of an execution debtor who is the head of a family, or the good or bad faith which marked his conduct, did not affect the protective efficacy of the statutes, which were intended, not for his benefit alone, but for that of his wife and children as well. "The Legislature had an eye to the family of the debtor, to his household, and determined to prevent as much suffering and misery from entering into such abodes as they could, by sav-

ing to them the small allowance mentioned in the statutes," says the opinion.

It is true, a homestead is specifically exempted from levy by the statute, as are certain articles of personal property; whereas, the debt garnished in the present case only became exempt when selected by the execution debtor in lieu of exempt articles which he preferred to part with or did not own. On this ground a distinction has been drawn in some decisions between the two kinds of property; namely, that whose status, as exempt from execution, is fixed by the very terms of the statutes, and that which only acquires such a status when the owner has exercised his privilege to claim it in place of the articles designated in the statutes. The theory of the distinction is, that property which only possesses immunity from levy at the option of the owner, which option he must exercise personally, can not be raised to the status of exempt property after the owner has made a fraudulent transfer of it; because, as he no longer owns it, he can not himself exercise the option, and as the exemption exists for his benefit exclusively, neither can the transferee. That doctrine is fallacious and tends to defeat the policy of the law, as it enables a creditor to seize goods of a debtor, because of a wrongful disposition of them by him, which his family would otherwise enjoy free from the creditor's claim. It deprives the innocent beneficiaries of the law of the protection to which they are entitled because of the husband's or father's guilty act.

The rule laid down in the above mentioned cases in regard to homesteads is sounder and more fully realizes the beneficent purpose of the statutes. And it has been ruled that the provisions in relation to the homestead right and those relating to the exemption of personal property from execution are *in pari materia* and should be construed together. "They have a common object in view. In the one case it is to allow the family for their comfort and support to keep certain necessary articles of which they can not be

deprived; and in the other to have and secure a permanent home free from the attacks of all creditors." State v. Pitts, 51 Mo. 133. From the debtor's prison to the free homestead and its furniture, is one of the longest strides upward the law has ever taken; a benign result of the sympathetic and essentially truer conception of right and justice which gradually became dominant in public opinion and finally took effect in legislation during the last century.

Applying the doctrine announced in the homestead cases, on the principle that all the exemption statutes are parts of one body of laws designed to protect unfortunate families from the rapacity of creditors who might otherwise strip them of food, raiment and shelter, this court decided in State ex rel. Neimann v. Koch, 47 Mo. App. 269, that where a debtor had made a fraudulent conveyance of certain personal property, but had remained in possession of it, he might claim the same as exempt from execution if he owned no other property when the levy was made, on the ground that he ought not to be estopped from asserting his statutory privilege (which would inure and was intended to inure to the benefit of his wife and children) as possession had not been taken by the transferee in the fraudulent conveyance.

Riefesel's legal rights can be in no way infringed by permitting appellant to claim the fund in controversy as exempt he having given notice of his claim before judgment was rendered against the garnishee and it appearing that he had no other property which Riefesel could have seized if he had not pursued this fund, nor any other which the appellant could have claimed. Riefesel was not and could not have been misled to his prejudice by the assignment to RoBards being absolute on its face, and there was no element of estoppel in the case, to prevent Baxter from selecting this money in lieu of other articles which he would have been entitled to hold free from levy if he had possessed them.

From the foregoing considerations the conclusion results

that the court below erred in adjudging that the money be paid to respondent and that judgment is, therefore, reversed and the cause remanded with the direction that a decree be entered in favor of the appellant. *Bland, P. J.,* and *Barclay, J.,* concur.