BROWN v. BROWN'S ADMINISTRATOR, *Appellant.*

1. **Homestead**: WIFE LIVING APART FROM HER HUSBAND. Whilst a
marriage *de jure* exists, the husband is the head of a family, al-
though composed only of his wife, who has left him ; and although
living apart from him at the time of his death, the wife is, under
the homestead act of 1865, (Gen. Stat. 1865, p. 449,) where there are
no minor children, entitled to the homestead.

2. ———. Where a dwelling house and appurtenances were situated
on an eighty acre tract in which the occupant had only a life estate,
*Held*, that under the homestead act of 1865, upon his death, the
right of homestead in his widow would attach to the remaining part
of the farm which was owned by him in fee simple, and that she
would be entitled to receive, in fee, a portion not exceeding 160
acres in quantity, nor $1,500 in value.

3. ———: HEAD OF A FAMILY. Where the owner of a farm rented the
same, and occupied but one room in the house, upon an agreed di-
vision between himself and his tenant of the profits and expenses,
for the purpose of securing to himself the services and attention of
the tenant and his family, *Held*, that this did not make the tenant
the head of the family, nor deprive the owner of the control over
the house previously exercised by him.

4. ———: JURISDICTION OF PROBATE COURT. The probate court having
jurisdiction of the estate of a deceased housekeeper, or head of a
family, has authority, under the statute, (1 Wag. Stat., § 5, p. 698,)
to make the necessary order on an administrator to surrender to
the party entitled, the possession of a homestead.

*Appeal from Greene Circuit Court.*—HON. W. T. GEIGER,
Judge.

*Simmons & Travers* for appellants.

1.   As there was no dwelling house on the land in dispute, it could not constitute a homestead.   1 Wag. Stat., § 1, p. 697; 7 N. H. 245 ; *Horne v. Tufts*, 39 N. H. 483; *Cook v. McChristian*, 4 Cal. 26 ; *Charless v. Lamberson*, 1 Iowa 439; 23 Texas 502; 1 Am.Law Reg., pp. 649 to 656, (N. S.); *Franklin v. Coffee*, 18 Texas 415.

2.   Respondent having abandoned her husband, and he having rented his house and farm, there was no one dependent upon him for support or under his control; and he was, therefore, neither a housekeeper nor the head of a family, and neither he, in his life-time, nor his wife, after his decease, was entitled to a homestead.   *Bowne v. Witt*, 19 Wend. 475; *Woodward v. Murray*, 18 Johns. 400; *Harshaw v. Merryman*, 18 Mo. 106; *Porter v. Bobb*, 26 Mo. 36; *Reese v. Chilton*, 26 Mo. 598.

*H. E. Howell* for respondent.

1.   It was not necessary that the building should have been situated upon the land in dispute; they were but a few steps north of it, upon a forty acre tract adjoining. *Skouten v. Wood*, 57 Mo. 380; *Perkins v. Quigley*, 62 Mo. 498; Thompson on Homesteads, § 145; *West River Bank v. Gale*, 42 Vt. 27.

2.   Hall was not Brown's tenant when Brown died, and if he were, it would make no difference in this case.   Taylor on Land. & Ten., (5 Ed.) § 24; Thompson on Homesteads, §§ 120, 274.

NAPTON, J.—This was an application to the court of probate and common pleas of Greene county, by the widow of Caleb Brown, asking that 120 acres, owned by her husband in his life-time, but then occupied by his administrator, should be declared her property in fee simple, under the 5th section of the homestead law, as it was in 1865, with a further petition that the administrator be or-

dered to deliver her possession of the same. This petition was filed in 1876, after the act of March 18th, 1875, but Caleb Brown's death occurred in 1874. The facts upon which this judgment was asked, were proved on the investigation, and are substantially these : Caleb Brown had a house in which he had resided for many years on a tract of land of eighty acres, in which he had merely a life estate, and cultivated portions of 120 acres adjoining, which belonged to him in fee, and which was proved to be worth not over $8.00 an acre. His children were all grown and married, and did not live with him. His wife, the plaintiff, lived with him on this place for about eight years, and then left him, on account, as she states in her testimony, "of troubles." She afterwards returned to his house, but finally left him. When this last desertion occurred, Brown had on the place a tenant named Hall, and at Brown's request, after his wife left, Hall and his family moved into the house occupied by Brown, and Hall's wife superintended or performed all the services usually devolved on the female portion of the household. Brown only occupied a single room in the house. Hall had a contract with Brown to cultivate the place for another year, upon an agreed division of the profits and expenses, when Brown died only a few months after the final departure of his wife. After his death she was allowed the $200 authorized under the 33rd section of the 2nd article of the administration act, and the $400 under the 35th section.

As Caleb Brown died in 1874, the plaintiff's rights are of course to be determined by the law as it was at that date, without regard to changes subsequently made, although made before the commencement of this suit. One of the questions presented by the state of facts is, whether the voluntary abandonment by the plaintiff of her husband, previous to his death, destroyed her right to the homestead, or in other words, whether the husband, without any children, was the head of a family within the meaning of the home-

1. HOMESTEAD: wife living apart from her husband.

stead law, after his wife left him. In the examination of this question we have no precedents in this State to guide to a conclusion, and the statute of 1865 is not without obscurity, however plain may be its general object. The decisions in Texas and New Hampshire, on this point, are in direct opposition to each other, it being held in New Hampshire that while the marital relation exists, the husband still continues the head of a family, though his wife has left him, with or without cause, and there are no children, and in the Texas courts that abandonment by the wife without cause effects a forfeiture of her rights in the homestead. Mr. Thompson, in his work on Homesteads, suggests as an explanation of these apparently conflicting views, that in New Hampshire the wife's interest in the homestead is purely inchoate, resembling dower, whilst in Texas it is a present right depending on the keeping together of the family. Thompson on Homestead, § 75. This explanation is not entirely satisfactory, especially in cases where no creditors are concerned, as is the present, for the Texas court concedes that where the wife leaves for good cause the rule there would be different, and this concession necessarily involves the investigation of a question foreign to the main issue, depending on a great variety of circumstances and difficult of solution. The rule in New Hampshire is certainly recommended by its simplicity and conformity to general principles regulating the marital relation. The application in special cases, like the present for example, may seem to lead to injustice and a departure from the leading object of all homestead exemptions, which is obviously to protect a home for the wife and children, or either. But the prevention of such consequences must be left to legislative action, and we, therefore, conclude that whilst a marriage *de jure* exists the husband is the head of the family though composed only of his wife who has left him, and consequently that the wife, though living apart from him at his death, is, in the absence of any minor children, entitled to the homestead.

Another point in this case is, that the dwelling house and appurtenances thereto were on the eighty acres in which Brown had only a life estate, and therefore, upon his death the homestead was gone; at all events that she could only claim the same homestead which the husband was entitled to, and as the entire tract contained 200 acres, and he could not claim beyond 160, without regard to value, her rights, if they did not cease altogether, would be confined to such portion of the 120 acres as would, with the eighty acres on which the house stood, make 160 acres. There is no doubt that whilst Brown was alive his homestead was confined to 160 acres, and, therefore, he could have been obliged to relinquish forty acres in some part of the tract of 200 acres. But we may suppose a case, in which the entire eighty on which his home was built, was entirely washed away by a flood, or otherwise destroyed by some convulsion of the earth, his homestead rights would not be lost by such accident, and as the 120 acres still left would be less in quantity than the statute allowed him, he could have claimed the whole unless it exceeded in value the $1,500. His widow would succeed to his rights, and the destruction of all title to the eighty acres on which the house stood would operate as effectually so far as she is concerned, as a destruction by water or earthquake. Only 120 acres were left on which she could claim a homestead, altogether less than the quantity allowed by the statute.

It is also insisted that Brown ceased to be a house-keeper after he rented to farm to Hall and he occupied but one room in the house. The tenancy of Hall did not, we think, divest Brown of his rights. It was simply an agreement to procure Hall's services upon a contract to pay him by a division of the profits. The invitation to him to occupy the house in order to procure the necessary attention to secure Brown's own comfort, did not make Hall the head of the house or deprive Brown of the control over it which he had previously exercised.

Hall did not cease to be a tenant upon the terms heretofore stated, because he was allowed to take charge of the house and occupy it with his family.

A further objection is made that the action should have been ejectment, to authorize the court to order a delivery of the possession. But this suit is brought under the 5th section of the homestead act, which provides that the "probate court having jurisdiction of the estate of such deceased housekeeper, or head of a family, shall, when necessary, appoint three com- missioners to set out such homestead to the person or persons entitled thereto." This statute, it may be observed here, evidently did not have in view a case where the applicant or applicants were not in possession, whilst it is equally obvious that this court (the probate court) was the court to which exclusive jurisdiction over the subject was intrusted. It was clear that no appointment of commissioners was needed to ascertain the value or quantity of the land claimed, and it would have been a useless expense to have made such appointment. The fact that the claimant in this case was not in possession, was a fact not anticipated by the Legislature, and, therefore, was not provided for, but as this court had undoubted authority to ascertain and declare the extent of the homestead, we see no reason why the same court might not make the necessary orders on the administrator to surrender the possession. To deny such authority would be only requiring two suits to effectuate a purpose which might as well be carried out in one. The judgment is affirmed.

AFFIRMED.