Bank of Versailles, *Appellant*, v. Guthrey *et al.*

Division Two, March 5, 1895.

1. Homestead: FRAUDULENT CONVEYANCE. While one can not convey his property which is subject to the payment of his debts in consideration of an agreement for support for life, without retaining sufficient to satisfy his creditors, it is otherwise with reference to his homestead.

127 189
131 691

127 189
144 375

127 189
150 450
79a 173

127 189
153 248
153 249
153 250
154 422

127 189
155 182

127 189
159 560

127 189
160 6
160 31

127 189
162 196

2. ——: ——: EXECUTION. Creditors have no interest in the homestead of the debtor, and hence can not sell it under execution, subject to the homestead right.

3. ——: HEAD OF A FAMILY. A man living on land with his two children who worked for him until their marriage and looked up to him as such, is a head of a family.

*Appeal from Morgan Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

AFFIRMED.

*A. L. Ross* for appellant.

(1) One can not transfer his property in consideration of an obligation for support for life, unless he retains so much as is necessary to satisfy existing debts. Wait on Fraudulent Conveyances and Creditor's Bills, [Ed. 1884] sec. 211, p. 295; *Stanley v. Robbins*, 36 Vt. 432; *Crane v. Stickles*, 15 Vt. 252; *Woodward v. Wyman*, 53 Vt. 647. (2) The deed of Guthrey to his codefendant, Ann E. Waller, is fraudulent and void as to existing creditors. This conveyance, by its terms, operates to hinder, delay and defraud creditors, and the intent is imputed to the parties. It is a fraud in law. It is apparent on the face of the deed. Wait on Fraudulent Conveyances and Creditors' Bills, secs. 9 and 10, pp. 14 and 15, and sec. 382, p. 506, and cases there cited; *Lionburger v. Baker*, 88 Mo. 447; *Knight v. Adams*, 46 Mo. 95. (3) Defendant James S. Guthrey was not the head of the family. Rapalje & Lawrence's Law Dict. [Ed. 1883], p. 596; see, also, *Brown v. Brown*, 68 Mo. 388; *Schaffer v. Beldsmeier*, 107 Mo. 314.

*J. A. Blevins* for respondent.

(1) The pleadings and evidence in this case show that plaintiff has no standing in a court of equity.

*Moore v. Wingate*, 53 Mo. 398; *Mullen v. Hewitt*, 103 Mo. 631; *Humphreys v. Co.*, 98 Mo. 548. (2) It is clearly shown by the evidence that defendant James S. Guthrey was the head of a family and a housekeeper, and that he was entitled to the premises in question as a homestead. *Leake v. King*, 85 Mo. 417; *Brown v. Executor*, 68 Mo. 338; *Beckman v. Meyer*, 75 Mo. 333; *Holland v. Kreider*, 86 Mo. 61; Thompson on Homestead, sec. 45. (3) Such being the case, he could convey the same to his codefendant, and such conveyance would be neither fraudulent nor void. The arrangements made by Guthrey were such as his necessities demanded, and were authorized by law. *Holland v. Kreider*, 86 Mo. 59; *Muenks v. Bunch*, 90 Mo. 500; *Davis v. Bessehl*, 88 Mo. 438; *Kendall v. Powers*, 96 Mo. 142; *Hart v. Leete*, 104 Mo. 337; *Grimes v. Portman*, 99 Mo. 229. (4) The conveyance was based upon a valuable consideration. But, even if the consideration should be deemed voluntary, the deed should stand, for Guthrey could give away his homestead without committing a fraud upon plaintiff. Cases *supra*. (5) If the court should set aside the deed to Mrs. Waller, Guthrey would still be entitled to claim the premises as his homestead. It could not be said that he abandoned the homestead, because he left it from necessity. He was old, blind, and sick, and had no one left with him to take care of him. Under these circumstances he was taken to his daughter's, where he could receive the attention which his age and infirmities required. Thompson on Homesteads, sec. 284; *Moss v. Warner*, 10 Cal. 296.

BURGESS, J.—This is an equitable proceeding to set aside a deed, made by the defendant Guthrey on the twenty-ninth day of December, 1891, to his daughter

and codefendant Waller, to one hundred and eight acres of land in Morgan county.

Defendant Guthrey bought the land in May, 1885. Prior to its purchase he lived in Saline county, Missouri. His wife died in 1874. He bought the land for a homestead, and moved onto it, with his son, James B., then about twenty-nine years of age, and his daughter, Callie, somewhat older, they being the only members of his family. He continued to live on the land and farm it until his son and daughter both married and left home, and being then eighty years old, feeble and almost helpless, he conveyed the land to his daughter Waller upon the express condition, and in consideration that she would maintain and support him during his natural life, and then moved to her house, where he has since remained, being taken care of and provided for by her. The land was all of the property that James S. Guthrey had at the time he deeded it to his daughter. It was worth from $1,200 to $1,500.

The evidence was conflicting as to who was the head of the family while defendant and his son lived on the land—whether it was defendant or his son.

In August, 1892, plaintiff obtained judgment in the circuit court of Morgan county, Missouri, against the defendant James S., and his son J. B., Guthrey, for the sum of $155.50, and being unable to make the judgment or any part of it, plaintiff instituted this suit to set aside the deed from defendant Guthrey to his daughter on the ground that it was fraudulent as to his creditors, and to subject the land therein described to the payment of its debt. The court rendered judgment for defendant and plaintiff appealed.

Plaintiff's first contention is that, as the land in controversy was all the property that defendant Guthrey owned at the time of the execution of the deed therefor to his daughter Mrs. Waller, the only con-

sideration agreed upon being the grantor's support during his lifetime, the deed was absolutely void as to his creditors, as the law will not allow one to transfer his property in consideration of an obligation for support for life, unless he retains a sufficient amount to pay his debts.

With respect to property which may be subjected to the payment of the debts of a debtor, we fully agree to the rule announced in Wait on Fraudulent Conveyances and Creditors' Bills [2 Ed.], sec. 211; *Crane v. Stickles*, 15 Vt. 252; *Stanley v. Robbins*, 36 Vt. 432; *Woodward v. Wyman*, 53 Vt. 647, that is, that he can not convey his property which is subject to the payment of his debts in consideration of an obligation for support for life, or any considerable length of time, unless he retain whatever is necessary to satisfy his creditors, as the law will not allow any person having means to make provision for himself and family during life at the expense of his creditors. To do so would be to encourage fraud, by permitting a debtor, possessed of an unlimited amount of property, to place it beyond the reach of his creditors by conveying it, for and in consideration of the support of himself and wife or any member of his family, for and during life of any one or all of them.

But the law as thus announced has no application to property which is exempt from seizure and sale under attachment and execution, such as a homestead. Creditors have no interest in such property, as it can not be subjected to the payment of their debts by proceeding in equity any more than it can be seized under attachment or execution. *Kendall v. Powers*, 96 Mo. 142; *Holland v. Kreider*, 86 Mo. 59. In *Davis v. Land*, 88 Mo. 436, it is said: "No fraud upon creditors can be perpetrated by any disposition the debtor may see

proper to make of his homestead. It is beyond their reach, both at law and in equity, and there can be no fraudulent disposal of such property within the meaning of the attachment law.''

Section 5435, Revised Statutes, 1889, provides that the homestead of every housekeeper or head of a family which is or shall be used by such housekeeper or head of a family as such homestead, shall be *exempt from attachment and execution* as therein provided. It will be observed that no restriction is placed upon the right of the housekeeper or head of a family, having the title in fee, to dispose of the homestead as he or she may think proper, but it is expressly provided by said section that nothing contained therein shall be so construed as to prevent the husband from mortgaging, alienating, or in any other manner disposing of such homestead, or any part thereof.

By section 5436, Revised Statutes, 1889, it is provided that whenever an execution is levied upon the real estate of a housekeeper or head of a family of which such homestead may be a part, or upon any part of such homestead as may be in excess of the limitation of the value thereof, such housekeeper or head of a family may have the right to designate and choose the part thereof to which the exemption shall apply not exceeding the limited value.

By section 5441, Revised Statutes, 1889, it is provided that the homestead shall be subject to attachment and execution upon all causes of action existing at the time of acquiring such homestead, and in case of existing estates such homestead shall not be subjected to attachment or levy of execution upon any liability thereafter created. The following section provides for the acquiring of a new homestead, with the consideration derived from the sale or other disposition of such prior homestead, and exempts such homestead thus

acquired from the payment of the same debts as was the former homestead.

By section 5439 of the same article it is provided that, in case the housekeeper or head of a family shall die leaving a widow or any minor children, the homestead right is extended to them until the youngest child attains its legal majority, and until the death of such widow, then the homestead right ceases, and the fee therein descends to the legal heirs of the original housekeeper or head of the family in whomsoever the legal title may have been at the time of his or her decease, subject to the laws relating to devise, descent, dower, partition and sale for the payment of the debts against the estate of the deceased.

The homestead is exempt from seizure and sale under attachment and execution by express statutory provision, by which it is also provided that it may be mortgaged, sold, alienated, or disposed of in any other manner that the owner thereof may think proper, or exchanged for another homestead, or sold and the proceeds arising from such sale applied for that purpose, and the homestead thus acquired is exempt from attachment and execution the same as the former homestead.

It would seem clear, from the provisions of the statute quoted, that it was never the intention of the lawmakers that any part of, or interest in, the homestead of a housekeeper or head of a family should be, in any manner, subjected to the payment of debts contracted after its acquisition. It is only after the expiration of the homestead right, it not having been disposed of by the owner of the fee during his or her lifetime, that it, like any other real property that he may then own, becomes subject to the payment of debts.

There is no such thing under our laws as subjecting the fee in the land, subject to the homestead right or interest, to seizure and sale under attachment, exe-

cution, or by proceeding in equity, upon the ground that it had been fraudulently or otherwise disposed of. If it is not subject to sale under attachment and execution before such disposition it is difficult to see how it becomes so by reason of such transfer. No creditor has any interest therein, it can not be subjected to the payment of his debt until after the homestead right expires by law, and certainly he has no right to complain of a transaction in which he has no interest. To hold that the fee in the homestead may be subjected to the payment of the debts of its owner, subject to the homestead right, is to deprive him of the right which is expressly conferred by statute, to sell, mortgage or exchange it for another homestead, a contention to which we are unwilling to give our assent. The homestead includes the fee; they are not two separable and divisible interests.

What was said in *Schaffer v. Beldsmeier*, 107 Mo. 314, which would seem to hold to a contrary view, was not necessary to a decision of that case and may be regarded as merely *obiter*. The same may be said with respect of *Miller v. Leeper*, 120 Mo. 466. But, in so far as they conflict with the views herein expressed, they should be overruled.

But it is insisted by plaintiff that the land in question was not the homestead of defendant Guthrey and that no homestead right ever attached.

The evidence showed that the legal title was in the defendant Guthrey, that his son and daughter lived with him for a number of years on the land, which was farmed by the father and son, the daughter looking after the household affairs. That this continued until both daughter and son were married and their father left alone. During the time defendant and his son and daughter lived on the land he was looked up to and regarded as the head of the family. Both son and

daughter worked without wages, and as members of the family. The court found that the father was the head of a family and as such entitled to claim and hold the land as a homestead. We have no disposition to interfere with the conclusion reached in this regard, which seems to be amply sustained by the evidence.

From what has been said it necessarily follows that the judgment should be affirmed. It is so ordered. All of this division concur.