Broyles v. Cox.

BROYLES, Appellant, v. COX et al.

### Division One, December 22, 1899.

1. **Homestead:** HEAD OF FAMILY. Where an unmarried man lives on his own land, and his mother, sisters and brother live with him in his own house, and he contributes to their support, he is the head of a family within the meaning of the homestead statute.

2. ———: SALE. Under the homestead law of 1875 the homestead property could not be sold during the life of the head of a family subject to such homestead right, and such attempted sale passed no title to the purchaser. And the same principle forbids the sale or the partition thereof during the life of the widow or the minority of the children.

3. ———: ADMINISTRATION. Deceased had a homestead in 58 acres of land from 1878 to the time of his death in 1896, his mother and sisters living with him and the accounts for their ordinary support being paid by him till his mother's death in February 1878. Shortly after her death one sister married, the other soon died, then he made a note for $150 to plaintiff, and for eighteen months lived on the place alone, and then married, and lived there till his death, leaving a wife and four children, and personal property valued at $292, and this homestead valued at $1,316.26. *Held,* that the probate court should under such circumstances refuse to grant letters of administration upon his estate, the note having been made after the beginning of the homestead and during its continuance, and hence none of deceased's property was subject to the payment thereof, nor could his homestead be sold after his death subject to the occupancy thereof of the widow during life and of his children during their minority.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

Broyles v. Cox.

*Martin & Woolfolk* for appellant.

(1)   The mother died in February, 1883, and from that time until his marriage, in 1884, about 18 months, Sumner Cox lived alone on the land, keeping batch.   The plaintiff's debt was contracted in March, 1883, when Sumner Cox was living alone on the land.   He was not a housekeeper, nor was he the head of a family. .  There is not a particle of evidence that he controlled, supervised and managed the affairs about the house.   Ridenour-Baker Gro. Co. v. Monroe, 142 Mo. 165.   (a)   Nor was there any evidence tending to show that any of the persons living with him were in any manner dependent upon him for support.   Thompson Homestead, sec. 46.   (b)   Nor that he had the right to exact obedience from them, or direct their movements except by consent. Freeman on Exec., sec. 222; Whalen v. Cadman, 11 Ia. 227.   (2)   If Sumner Cox had a homestead at all, it was a homestead under the law of 1875, and upon his death it became assets of his estate and liable for sale, subject to the life use of the widow and minor children until their majority.   Under the homestead law of 1875 the creditor has an interest in the homestead.   Bank v. Spangler, 59 Mo. App. 172; Schaeffer v. Beldsmeier, 107 Mo. 314; Miller v. Leeper, 120 Mo. 466. (a)   The homestead law does not create a vested right in a homesteader, the legislature may reduce the value or take it away entirely.   Thompson Homestead, sec. 13; Mooney v. Morsorly, 36 Ill. App. 175.   (b)   The homestead rights to the head of a family is to be determined by the law in force at the time the debt was created.   Stewart v. Black, 22 S. E. Rep. 177.

*Norton, Avery & Young* for respondents.

(1)   The statute provides a homestead for every housekeeper or head of a family.   R. S. 1889, sec. 5435.   (a)

The filing of the deed for record fixes the date of acquiring the homestead, if debtor has a homestead therein. R. S. 1889, sec. 5441; Finnegan v. Prindeville, 83 Mo. 517. (b) It is not necessary that the head of the family should be under legal obligation to support the other members thereof; it suffices that he is under a moral obligation to support them, and that he does so. State ex rel. v. Kane, 42 Mo. App. 253. (c) A homestead right acquired by the head of a family is not lost by the death or removal of his family, if he continues to reside on the place. Beckman v. Meyer, 75 Mo. 333. (2) Under the homestead law of 1875, the creditor has no interest in the homestead of the debtor. Bank of Versailles v. Guthrey, 127 Mo. 189; Grime v. Portman, 99 Mo. 229. Bank of Versailles v. Guthrey, *supra*, overrules Schaffer v. Beldsmeier, 107 Mo. 314, and Miller v. Leeper, 120 Mo. 466, cited by appellant. (3) It is within the power of the statute to change the remedy so long as it does not essentially affect rights embodied in the contract; and such change does not infract the rule that forbids the impairment of the obligations of the contract. State ex rel. v. Hager, 91 Mo. 452.

MARSHALL, J.—William S. Cox died in Lincoln county, in August, 1896, leaving personal property of the value of $292, and fifty-eight acres of real estate of the value of $1,316.26, which being duly appraised, by appraisers appointed by the probate court, as of the value stated, was, by order of that court, turned over to his widow, the defendant, Emma Cox, as her absolute property and letters of administration refused "unless on application of creditors or other persons interested the existence of further or other property be shown."

Thereafter in 1897, the plaintiff applied to the probate court for an order granting letters of administration on said estate, alleging that he was a creditor thereof. On a hearing that court granted the application, "holding that the fee in the

homestead of the widow is subject to the payment of debts contracted prior to the amendment of the homestead act by the Legislature in 1895." Emma Cox, the defendant, appealed to the circuit court, and that court held that William S. Cox, "at his death or since, owned no property subject to administration" and ordered that no administration be had upon his estate. From this judgment, the plaintiff appealed to this court.

The land in controversy was a part of the estate left by the father of William S. Cox, at his death some time prior to 1861, and was the portion of the father's estate which was set off to W. S. Cox by the voluntary partition between the heirs in 1878. At that time W. S. Cox was unmarried, and lived on this land, and his mother and two unmarried sisters, and a brother, lived with him on the land, and continued so to do until the death of the mother in February, 1883; the marriage of one of the sisters just after her mother's death, and the death of the other sister, shortly afterwards. Thereafter, for eighteen months, W. S. Cox lived on the place alone, until he married, and thence forward he continued to live on it with his family as his homestead until his death in 1896, and his widow and four children have lived on it ever since. A "Mr." Smith, witness for plaintiff, testified that while W. S. Cox, and his mother, sisters and brothers lived on the land, he did not know who supported the family, but that "Sumner" (W. S. Cox) "said they all contracted their own debts and settled them when he and the boys and the old lady lived there; the old lady paid her debts; each was living independent of the other."

Columbus Cox, one of the brothers of W. S. Cox, also a witness for plaintiff, who was the administrator of the mother's estate, testified that the mother left a horse, some cattle and "a few things around the house," which W. S. Cox bought at the administrator's sale; that at the time his mother died: "Sumner and two sisters were living there then. They all lived off of the place. Sumner cultivated the farm then. After the

division and Sumner got his piece of land, he and the two girls lived on it with mother until her death in 1883. One of the girls married just after mother's death. Sumner kept batch about eighteen months before he was married in 1884. After he married he lived on the place until he died last year. He left a wife and four children. . . . Sumner and the girls kept house; mother helped along, she attended to the housekeeping; the bills were all run together and all paid together. We all worked and made the money."

This same witness further testified as follows: "Q. Your mother and sisters and you would contract your own bills and pay your own debts? A. No, sir. Q. Did your brother pay any bills for your mother? A. The way that was done, the bill was all run together, everything they bought. Q. All pay together? A. Yes, sir; *everything was carried on his name, and he done the paying.* Q. Each of you contributed your part? A. We worked and made the money. Q. He done it? A. *He was the head of the family.* Q. The old lady paid her bills, too? A. No, sir, that's the way it was paid. Of course they raised chickens. Q. Your mother did not contract any store bills in her own name? A. No, sir."

Fred Cox, a brother of the deceased and a witness for defendants, testified: "*Sumner was the head of the family, and supported the family*; after mother's death he remained there; sisters lived with him a month after; Sumner lived there alone eighteen months and then married and lived there until he died. Left his wife and four children; they are occupying the premises. . . . *Sumner provided everything and supported the family.* When I lived there the boys all worked together and supported the family."

The plaintiff holds a note made by W. S. Cox, dated March 16, 1883, for $150, payable one day after date, with interest at the rate of ten per cent per annum, compounded

annually, on which there is a credit of $50, March 1, 1886, and $100, Nov. 26, 1887.

No declarations of law were asked or given. Appellant here asserts two propositions of law; first, that W. S. Cox was not entitled to a homestead in the land because he was not the head of a family or a housekeeper at the time the land was acquired, in 1878, or at the time the debt to plaintiff was contracted, in 1883; and, second, that if Cox was entitled to a homestead at all it was under the Act of 1875 (Laws 1875, p. 60), which at his death became assets of his estate and liable to sale, subject to the life use of the widow, and the minor children until their majority, and the plaintiff, as his creditor, has an interest in the homestead, and that the homestead act of 1895 (Laws 1895, p. 186), so far as it operates upon debts in existence at that time, "violates the Constitution prohibiting the enactment of laws impairing the obligation of a contract," both of which propositions were called to the attention of the trial court in the motion for a new trial.

This being a proceeding at law, and no declarations of law being asked or given by the trial court, and the facts not being agreed upon or the evidence wholly documentary, we might content ourselves with merely affirming the judgment below for this reason (Sieferer v. St. Louis, 141 Mo. l. c. 592), but as there is no substantial conflict in the evidence as to the facts, it presents, practically, a simple question of law, and we shall so treat it.

From 1878 to February, 1883, when his mother died, William S. Cox owned the land in question. His mother, two sisters and at least one brother lived with him on the land. They all worked, in one capacity or another, much as the members of a man's family living in the country usually do. Both of his brothers, one a witness for and the other against his widow and children, testify that he was the head of the family; that all the bills were made in his name, but

that all the relatives worked to   help make the money that paid the bills.   As against this testimony is that of Mr. Smith, a neighbor of deceased, who testified on behalf of the plaintiff that he did not know who supported the family, but that Sumner (the deceased) said they all contracted their own debts and settled them, each living independent of the other. As Cox was dead, of course this could not be contradicted. But the fact remains that they all lived on Cox's land and in his house, and to this extent, at least, he contributed to the support of his mother and sisters and brothers and was therefore a housekeeper or the head of a family within the meaning of the statute. [Finnegan v. Prindeville, 83 Mo. 517.] It is not essential that a man shall be a married man to be the head of a family; it is enough to satisfy the statute, if he contributes in part to the  support of those who have a moral, though not a legal, claim upon him.   [State to use v. Kane, 42 Mo. App. 253; Wade v. Jones, 20 Mo. 75; Duncan v. Frank, 8 Mo. App. 286.]   A married man is the head of a family, even when his wife has left him and  he  has  no  children. [Brown v. Brown, 68 Mo. 388; Whitehead v. Tapp, 69 Mo. 415.]   So, too, if he lives on the land with his two children, who are of age and work for him without wages and look up to him as such.   [Bank of Versailles v. Guthrey, 127 Mo. 189.]   It is sufficient if he "controls, supervises and manages the affairs about the house," and it is not necessary that he shall be "a father or a husband." [Grocery Co. v. Monroe, 142 Mo. l. c. 170.]

Under this rule and these facts it is too clear for dispute that William S. Cox became the head of a family  in 1878 (Finnegan v. Prindeville, 83 Mo. 517), and continued so to be thereafter until the time of his death, and was such at the time he contracted the debt to plaintiff in March, 1883 (Beckman v. Meyer, 75 Mo. 333).   Being the head of a family and the owner and occupant of the land as a homestead long prior to contracting the debt, the plaintiff acquired no

interest in the land or right to look to it as security for his
money when the loan was made, or to have it sold subject to
the homestead rights of his widow and children.    [Bank of
Versailles v. Guthrey, 127 Mo. 189, which case overrules,
expressly, Schaffer v. Beldsmeier, 107 Mo. 314, and Miller v.
Leeper, 120 Mo. 466.]

Of course, an homestead is not exempt as against debts
existing at the time it is acquired.    [State ex rel. v. Divel-
ing, 66 Mo. 375; Buck v. Ashbrook, 59 Mo. 200; Stivers v.
Horn, 62 Mo. 473; Berry v. Ewing, 91 Mo. 395.]    But in
this case the debt to the plaintiff was not created until March,
1883, and the homestead had been acquired and established
in 1878 and kept up continuously thereafter until his death
in 1896.    So that this is an after-created debt for the pay-
ment of which the homestead was not subject to levy, attach-
ment or sale during his lifetime and in which the plaintiff-
creditor had no interest, but which the testator might have
sold during his life and a perfect title would have passed to the
purchaser so far as any right of his creditors was concerned.

The point of plaintiff's contention, however, is that
under the Act of 1875, the homestead, upon the death of the
head of the family passed to the widow and children, "with-
out being subject to the payment of the debts of the deceased
unless legally charged thereon in his lifetime, until the young-
est child shall attain its legal majority, and until the death of
such widow, and such homestead shall, upon the death of
such housekeeper or head of a family, be limited to that pe-
riod.    But all the right, title and interest of the deceased
housekeeper or head of a family in the premises, except the
estate of the homestead thus continued, shall be subject to
the laws relating to devise, descent, dower, partition and sale
for the payment of debts against the estate of the deceased,"
etc., whereas by the Act of 1895, the homestead, upon the
death of the head of a family, passed to the widow and chil-
dren, "and shall continue for their benefit without being sub-

ject to the payment of the debts of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or re-marriage it shall pass to the heirs of the husband," etc., and it is claimed that the Act of 1895 takes away the right which a creditor has under the Act of 1875 to sell the homestead, during the life of the widow or minority of the children, subject to the homestead rights of the widow and children, and hence a vested right in a remedy to collect the debt, which was as much a part of the contract as the debt itself, was taken away, and the obligation of the contract was thus impaired.

This contention is untenable. This court held that under the Act of 1875 the property could not be sold for the payment of debts, during the life of the head of a family subject to such homestead right, and that such attempted sale passed no title to the purchaser. [Bank of Versailles v. Guthrey, 127 Mo. 189; Macke v. Byrd, 131 Mo. 682; Ratliff v. Graves, 132 Mo. 76.] The same principle forbids the sale thereof during the life of the widow or the minority of the children. It has also been held that during the last named period the homestead can not be partitioned under the Act of 1875. [Rhorer v. Brockhage, 86 Mo. 544; Hufschmidt v. Gross, 112 Mo. l. c. 660.] No distinction was made in the Act of 1875 between a partition and a sale for the payment of debts during the extended continuance of the homestead rights in the widow and children, and the same reason which forbids the one likewise prohibits the other.

In Skouten v. Wood, 57 Mo. 380, it was held that, under the homestead law of 1865, the widow took a fee simple absolute in the homestead, subject to the homestead rights of the

children, and that on her death the estate would go to her heirs to the exclusion of his heirs. In this holding, the decisions of the Supreme Court of Vermont, from which State our statutes were taken, was followed. But since the passage of the Act of 1875 providing that, subject to the homestead rights of the widow and children, the homestead should be subject to the laws of devise and descent, it has been held the widow takes a life estate in the homestead, the children have an estate in the use during their minority, and after the widow's death and the children's majority the estate passes to the heirs of the husband. [Hufschmidt v. Gross, 112 Mo. l. c. 657.] And this is, practically, the change which the Act of 1895 makes in the Act of 1875, for whilst the Act of 1875 provides expressly that subject to the homestead rights of the widow and children the property should be subject to the laws of devise, descent, dower, partition and sale for the payment of debts against the estate of the deceased, and whilst this provision is omitted from the Act of 1895 and instead thereof it is provided that upon the death or re-marriage of the widow and upon the youngest child attaining its majority, the property shall pass to the heirs of the husband, the result is the same under both acts, as under neither could the property be sold for the debts of the deceased or partitioned during the continuance of the extended homestead rights, and under both it would, at the termination of the extended homestead rights, become assets descended from the ancestor to his heirs, which would be subject to the payment, at the expiration of such time, of his debts.

The construction placed upon the Act of 1875 was as much a part of plaintiff's contract as any other part of it, and as under that construction of the Act of 1875 he had no vested right in the remedy, to sell the homestead for the payment of the debts of the husband during the life of the widow or the minority of the children, and as the Act of 1895 was to the same effect, it follows that the Act of 1895 took away

no rights or remedies which the plaintiff had when the contract was made, and hence that such Act, of 1895, does not violate the constitutional inhibition against the passage of laws impairing the obligation of a contract.

The judgment of the circuit court was right and it is affirmed.

All concur.