## CREECH, Appellant, v. CHILDERS et al.

### Division One, May 15, 1900.

1. **Homestead: SALE: PURCHASER'S TITLE.** A purchaser at a sheriff's sale, by virtue of a general judgment, execution and levy on a part of a homestead during the lifetime of the homesteader, acquires no title, if the homesteader became the head of a family before the debt was made.

2. ————: **SALE BEFORE ASSIGNMENT.** And although the lot on which the mansion house stands contains more square rods than is by law fixed as the maximum size of a homestead in a city, yet the sale of other lots which constitute a part of the homestead, without any notice to the homesteader of his homestead rights by the sheriff, or any opportunity given him of selecting the part he would retain as a homestead, or the assignment of his homestead by commissioners, and without any statement in the sheriff's return that such proceedings were had, is unlawful and void.

3. ———: ———: ———: EJECTMENT: MARRIAGE OF WIDOW. In a
. suit by the purchaser for the recovery of a part of a homestead
which was sold under a general judgment before any selection of
homestead by the owner, or opportunity so to do, the plaintiff can
not complain that the homesteader left only a widow and she has
since married, because such sale was unlawful, and plaintiff must
recover on the strength of his own title.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,*
Judge.

AFFIRMED.

*Geo. W. Colbert* and *Martin & Woolfolk* for appellant.

The property was not a homestead for the following
reasons: (1) It is situated in the corporate limits of Troy.
The dwelling house in which they lived is located on lot 51.
Lot 51 is one hundred feet square and contains over thirty-six
square rods of land. At the time the debt of Maggie Vertrees
was created in 1877, the extent of homestead exemptions in
"cities or corporated towns and villages having a less popula-
tion than forty thousand shall not include more than thirty
square rods of ground or exceed the total value of $1,500."
Sec. 2689, R. S. 1879. The fact that such homestead was
enlarged to five acres by the act of March 26, 1881, could not
operate against the debt of Maggie Vertrees contracted in
1877. Thompson's Homestead, secs. 9, 10, 11 and 13; Cun-
ningham v. Gray, 20 Mo. 170; Harvey v. Wickham, 23 Mo.
112; Berry v. Ewing, 91 Mo. 395; Meyers v. Gale, 45 Mo.
416; Dunn v. Stephens, 64 N. W. Rep. 924. (2) There
was no evidence that lots 51 and 52 and the building thereon,
which were reserved from the sale under Maggie Vertrees'
judgment and which is still held by the defendant, Nellie
Childers, widow of Louis Vertrees, did not equal in value
$1,500. The burden was on defendants claiming the exemp-
tion to show all the facts that would entitle them to such
exemptions. Thompson's Homestead, secs. 701 and 702;

Freeman's Execution, sec. 211. (3). Louis Vertrees was the owner of the property and if he had a homestead right in the lots sold he alone could have asserted it against the sale. Finley v. Barker, 110 Mo. 408; Chance v. Norris, 143 Mo. 235; Paddock v. Lance, 94 Mo. 283.

*Norton, Avery & Young* for respondents.

(1) This case should be affirmed because it was an action at law tried by the court without a jury and no instructions were asked or given, as shown by the record, and the Supreme Court, in the absence of instructions, will not review it. Altum v. Arnold, 27 Mo. 264; Krider v. Milner, 99 Mo. 145; Daudt v. Keene, 124 Mo. 105; Dollarhide v. Mabary, 125 Mo. 197; Broyles v. Cox, 153 Mo. 242. (2) The evidence shows that the defendants were entitled to possession by the statute of limitation,' they having been in possession claiming title for more than ten years next before the suit was brought, and their possession being open, notorious and continued. Wilson v. Taylor, 119 Mo. 626; Fugate v. Pierce, 49 Mo. 441; St. Louis v. Priest, 103 Mo. 652; Harper v. Morris, 114 Mo. 317; Hedges v. Pollard, 149 Mo. 216. (3) The defendant, Nellie Childers, was entitled to the possession of the land under the provisions of the homestead law of Missouri. Macke v. Byrd, 131 Mo. 682; Vogler v. Montgomery, 54 Mo. 577; Perkins v. Quigby, 62 Mo. 498; Beckman v. Meyer, 75 Mo. 333; Holland v. Kreider, 86 Mo. 59; Grimes v. Portman, 99 Mo. 229; Bank v. Guthrie, 127 Mo. 189.

MARSHALL, J.—Ejectment to recover lots 25 and 26 in the city of Troy. The petition is in the common form, and the answer is a general denial. The trial in the circuit court was before the court, sitting as a jury, no instructions

were asked or given, the judgment was for the defendants and the plaintiff appealed.

The facts are these. Mr. Vertrees (Christian name not given) died in 1865, leaving a widow, Mary, and four children by a former marriage, to-wit, Isaac, Louis, Maggie and Campbell. At the time of his death he occupied the land in question with lots 51 and 52, as a homestead. The mansion house stood on lot 51, a building containing a carding machine stood on lot 52, and lots 25 and 26 were used as an orchard and pasture. The legal title to the whole was, however, in Mrs. Mary F. Vertrees, under a deed from Benedict Crump, dated January 17, 1859. After Mr. Vertress's death the widow and children continued to occupy the land as a homestead until 1872, when Mrs. Vertrees died, and by her will devised the whole property to Louis Vertrees. Mrs. Vertrees left debts, however, so on proper application of her administrator the probate court ordered the land to be sold to pay the debts of the estate, and at that sale on January 13, 1875, Louis Vertrees became the purchaser and received a deed. So that it is a fact, and so conceded, in this case, that Louis Vertrees is the common source of title. Thereafter Louis continued to live on the place and took care of and supported his brother Campbell and his sister Maggie, who also lived on the place with him. Louis married Nellie McKay on the 17th of May, 1880. Louis became indebted to Maggie, at some time, not disclosed by the record, whether before or after he acquired the land and began to use it as a homestead, is not apparent from the record, but on the 6th of April, 1881, Maggie obtained a judgment in the circuit court of Lincoln county against Louis, and lots 25 and 26 were seized and sold under the execution issued on that judgment, on September 22, 1881, and Campbell Vertrees became the purchaser. Louis died on the 17th of October, 1881, while still in possession of the whole property as a homestead, and his widow Nellie, the defendant, who has since married H. F. Childers, the co-

defendant, has continued to occupy the whole premises as a homestead ever since.  The plaintiff holds the paper title to lots 25 and 26, under mesne conveyances from Campbell Vertrees, who purchased as aforesaid at the sheriff's sale in 1881, and the defendant, Nellie, claims the right to the possession as a homestead, and also claims that the plaintiff has no title because the sale by the sheriff in 1881 conveyed no title. Hence this suit was begun on March 3, 1897, to recover possession.

In all its essential features this case falls within the rule laid down in Broyles v. Cox, 153 Mo. 242, and the cases therein reviewed.  At the date of the judgment against him on the 6th of April, 1881, and for about six years before that time Louis Vertrees was the head of a family within the meaning of the law, and this property was a part of his homestead.  For nearly a year before that date he had been a married man, and his wife lived with him in the homestead. It does not appear that the debt for which the judgment was obtained antedated his acquisition of the homestead.  So that the case is this: a portion of Louis's homestead was levied on and sold during his lifetime under an execution based on a general judgment against him.  The purchaser obtained no title by virtue of that sale.  [Broyles v. Cox, *supra*, and cases therein cited.]  The plaintiff holds under the purchaser at that sale, and therefore has no title as the purchaser acquired none that he could convey.

But the plaintiff insists that the tract embraced more land than was allowed for a homestead by the laws then in force (sec. 2689, R. S. 1879), that is, that lot 51 alone, on which the house stood, contained thirty-six square rods, while at that time a homestead in a city of less than forty thousand inhabitants was not allowed to exceed thirty square rods, and hence the excess was subject to execution.  The fatal defect in this contention, however, is that Louis was not notified of his homestead rights by the sheriff before the sale and given

an opportunity of selecting the part he would retain as a homestead nor was any part set off to him by commissioners appointed by the sheriff so to do before the sale, nor were such proceedings in respect to the homestead stated in the return upon the execution as the law requires. [Sec. 2690, R. S. 1879.] Until these mandatory provisions of the statute were obeyed there was no separation of the excess from the homestead, and therefore the levy and sale were unlawful and void and the sale conveyed no title. [Macke v. Byrd, 131 Mo. 682.]

The fact that Louis's widow has since re-married does not affect this controversy, for the plaintiff must recover on the strength of his own title, and not by virtue of the weakness or want of title of the defendant, who is in possession. The judgment of the circuit court is right and is affirmed. All concur.