# R. I. JANUARY, Appellant, v. LEVI MARLER et al.

### In Banc, May 17, 1918.

1. **HOMESTEAD: Home.** The homestead statute was framed on the principle that the home is the thing to be encouraged.

2. ———: **Head of Family.** The homestead statute applies alike to "the homestead of every housekeeper or head of a family," and this description, carefully preserved in its disjunctive form, is repeated in section after section of the act.

3. ———: **Dwelling House.** The homestead statute defines the word homestead to be the "dwelling house and appurtenances, and the land used in connection therewith" to the extent specified.

4. ———: **Family: Relationships to Head.** The "family," as used in the homestead statute, is the personnel of the home; and it is usually unnecessary to discuss the degrees of consanguinity to which the term refers. In this case the family consisted of an unmarried man, who owned the forty acres of land, and an elderly maiden sister, who resided with him thereon, kept his house in order and devoted her spare time to manual labor upon the fifteen acres of cultivated land, and as a result of such labor in the course of many years acquired a couple of horses, a cow and two calves, but otherwise received her support from him; and it is *held* that there was a family within the meaning of the homestead statute, and that he was "the head of a family."

5. ———: **Sale Under Execution: Excess: Title of Purchaser.** Judgment for debt was obtained against an unmarried man, who was the owner of forty acres of poor land, upon which was a dwelling house, about fifteen acres of which had been reduced to cultivation. He had been the owner for twenty years, and during fourteen years of that time occupied the dwelling house with his widowed mother and maiden sister; after the mother's death he and the sister continued for six years to reside on the land. The sister kept the house and worked out of doors, as well as in the house, and as a result of her manual labor acquired a little live stock, but otherwise she neither had nor earned any money, but the brother managed the place and supported her. After the judgment against the brother he conveyed the forty acres to her, and she conveyed it to another who knew the facts concerning the indebtedness. Execution was issued and the property sold and conveyed by the sheriff to plaintiff, who brings suit to have the brother's conveyance set aside as a fraud upon his creditors. *Held*, that the property was a homestead, the brother the head of a family, and the conveyances could not be set aside as a fraud upon creditors.

> *Held*, by GRAVES, C. J., concurring, with whom WOODSON, J.,
> concurs, that the owner of a homestead can convey the same
> without committing a fraud against his creditors, and the
> property being of but little value and entirely within the
> quantity and value fixed by the statute, the sole question is
> whether a homesteader who has a creditor can convey good
> title to the homestead· proper without being subjected to a
> charge of fraud, and the question of whether he can convey
> the surplus above the homestead in value or quantity is not
> for adjudication. [Distinguishing Armor v. Lewis, 252 Mo. l.
> c. 584, and Field v. Jacobi, 181 S. W. l. c. 69, and holding that
> the question of the right of the homesteader to convey the sur-
> plus over and above the homestead proper was not involved in
> those cases.]

> *Held*, by BOND, J., dissenting, that the sale, under execution, of
> land subject to a homestead, is, as to the homestead itself
> and the entire interest arising therefrom, void; but as to
> the remainder estate, after the lapse of all homestead rights,
> the sale carried the title and subjected it to the payment of
> the debt. [Citing dissenting opinion in Armor v. Lewis, 252
> Mo. l. c. 584, and the concurrence therein in Fields v. Jacobi,
> 181 S. W. l. c. 69.]

Appeal from Reynolds Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED.

*Brewster & Brewster, O. L. Munger* and *R. I. January* for appellant.

(1) A debtor on the eve of insolvency, conveying
all his real estate to a near relative, is a badge of
fraud; and when the evidence shows a sale under such
circumstances to a sister of a $500 farm where she
only pays $10, and no note for the remainder, calls
for ·close scrutiny by courts of equity, and in such
cases courts will have no hesitancy in declaring such
conveyances fraudulent as against creditors. Grocery
Co. v. Monroe, 142 Mo. 165; Hurley v. Taylor, 78 Mo.
238; Snell v. Harrison, 104 Mo. 158; Seger v. Thomas,
107 Mo. 635; Klauber v. Schloss, 198 Mo. 502. (2) In
order that an unmarried man may be entitled to a
homestead in lands, exempt from execution on debt,
there must be a person living with him on said premises,

who is legally or morally depending on him for support,
and one whom he does support. It is not enough that
he may support the person, but the person must be
wholly dependent on him for support. R. S. 1909, sec.
6704; Elliot v. Thomas, 161 Mo. App. 445; Robinson
v. Turner, 14 Ky. Law Rep. 79; 15 Am. & Eng. Ency.
Law, 539; Brokaw v. Ogle, 170 Ill. 126; Ramsey v.
Ferguson, 32 Ky. L. R. 1033; Fehd v. Oskaloosa, 117
N. W. (Iowa), 989; Harbison v. Vaugh, 42 Ark. 539.

*John H. Raney* and *J. B. Daniel* for respondent.

(1) An unmarried man with whom a sister lives
constitutes a family within the meaning of the home-
stead law, and if he contributes in part to the support
of such sister he is the head of the family. Broyles v.
Cox, 153 Mo. 242; Duncan v. Frank, 8 Mo. App. 289;
Bank v. Guthrey, 127 Mo. 189. (2) A homestead right
acquired by the head of a family is not lost by the
death or removal of all other members of the family
so long as he continues to reside upon the place.
Elliot v. Thomas, 161 Mo. App. 447; Beckman v. Meyer,
75 Mo. 333; Biffle v. Pullman, 114 Mo. 50.

BROWN, C.—This is a suit in equity to set aside
a deed from defendant Levi Marler to his sister, the
defendant Mary Ann Rebecca Marler, dated May 8,
1912, and conveying forty acres of land in Reynolds
County, for fraud against plaintiff, a creditor.

The facts are that on May 31, 1912, one Smith
recovered, in the Reynolds Circuit Court, judgment
against Marler for two hundred and eight dollars upon
a promissory note. He assigned this judgment to
plaintiff on June 3, 1912. Plaintiff caused execution
to be issued on the judgment and levied on this land,
which was sold by the sheriff, and he became the
purchaser, receiving a sheriff's deed therefor. On
September 13, 1913, Mary Ann Rebecca Marler convey-
ed the land to the defendant Coleman, who knew the
facts concerning the indebtedness.

The only question made by the parties is whether or not the forty acres of land involved in the controversy was the homestead of the defendant Levi Marler at the time of the conveyance to his sister.

The land was of little value, only fifteen acres of it having been cultivated up to the time of the trial. It had sufficed as a home for the Marler family for forty years. The father died twenty-two years before the trial, leaving a widow and five living children, and two children of a deceased daughter. The defendant Levi bought out all the other heirs, and he and his defendant sister continued to live on the land as their home until the execution of the deed to defendant Coleman, the mother living with them until her death, which occurred six years before the trial. At the time of her death Levi was forty-one years old and Mary Ann Rebecca forty-five. She worked out of doors on the place as well as in the house, and some of the little stock which they accumulated was owned by her. There was nothing in the evidence to indicate that she had or earned any money for her own support, otherwise than by her labor on the place. Her position there is described by one of appellant's witnesses as follows: "I know Levi Marler had control of the place; that he managed the place and supported her. He is an unmarried man; he never married." The evidence on both sides tends strongly to support this statement. The only evidence relied on by appellant to show any other relation is that she worked hard and accumulated a little stock of her own while doing so.

It is admitted by the parties in their briefs that the only question in this case is whether, at the time of the execution of the note which is the foundation of the judgment under which the appellant claims, Levi Marler was "a housekeeper or head of a family" within the meaning of that expression as used in Section 6704, Revised Statutes 1909. He *owned* the place, and it was his home in the sense that it was his only domicile. His occupation of the premises must, in the

absence of all explanation, be attributed to such owner-ship. As owner and occupant he was, prima-facie at least, in control of all the activities of his own house-hold. It was his home, and, in the sense in which the term is used in the section we have already cited, he was the housekeeper. The homestead statute seems to have been framed upon the principle that the home is a thing to be encouraged, and it requires no argument to demonstrate its public utility and that the community in which the people live in their own homes is a fortunate one. This statute applies alike to "the home-stead of every housekeeper or head of a family" and this description is repeated, carefully preserving its dis-junctive form, in section after section of the act, so that we are not at liberty to assume that the form was carelessly or awkwardly used. We must assume that the legislative intention corresponded with the legis-lative words. The word "homestead" as used in the foregoing quotation from the statute had its ordinary meaning in such a connection, and that there should be no mistake in that respect the Legislature defined it as the "dwelling house and appurtenances, and the land used in connection therewith" to the extent speci-fied. By the passage of the act this became the *legal* definition of the word homestead as used in it. We mention these particulars to indicate that in case of this particular act it is unnecessary to enter upon any dis-cussion of the meaning of the words "head of a family." The "family" is the personnel of the home, and it is unnecessary in this case to discuss the degrees of consanguinity, if any, to which the term may refer. In this particular case the owner's sister, an elderly maiden lady, resided with him, kept his house in order and devoted her spare time to manual labor upon the fifteen acres of ground which seems to have constituted the cultivated land of the homestead. These two were the family. She was supported from the land, and seems, during the many years she resided on it, to have accumulated a couple of horses, a cow and two calves.

The argument of the appellant was largely devoted to showing that she was independent of her brother in the matter of sustenance, and should have made her own home. The circumstances in evidence do not so impress us. They were sufficient to entitle the owner to the benefit of the homestead as to the land in question, and, for that purpose, his sister was a member of his family. "It is not necessary that he shall be a father or a husband." [Grocery Co. v. Monroe, 142 Mo. l. c. 170; Broyles v. Cox, 153 Mo. 242, 248; Bank v. Guthrey, 127 Mo. 189; Brown v. Brown's Admr., 68 Mo. 388; Whitehead v. Tapp, 69 Mo. 415; Forbes v. Groves, 134 Mo. App. 729.] In the case last cited the question seemed to be whether the son or his aged father was at the head of the family. In deciding in favor of the former the Kansas City Court of Appeals remarked: "It is one thing to be honored as the patriarch of the family and quite another to possess real and final authority in its affairs." The appellant cites Elliot v. Thomas, 161 Mo. App. 441, as an authority for the proposition that "in order that an unmarried man may be entitled to a homestead in lands, exempt from execution on debt, there must be a person living with him on said premises, who is legally or morally depending on him for support, and one whom he does support. It is not enough that he may support the person, but the person must be wholly dependent on him for support." If there is anything in the elaborate and learned opinion in that case inconsistent with the doctrine we have stated and cases we have cited, we are compelled upon principle and authority to disregard it.

The judgment of the circuit court is affirmed.

*Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of Court in Banc. *Graves, C. J.,* concurs in separate opinion, in which *Woodson, J.,* joins; *Williams, Blair* and *Walker, JJ.,* concur; *Bond, J.,* dissents in separate opinion; *Faris, J.,* dissents.

GRAVES, C. J. (concurring)—I fully concur in the opinion of the Commissioner.

The only question in the case, as said by the Commissioner, is whether or not this forty acres of land, was, in fact, the homestead of Levi Marler, when he made the deed to his sister. If it was his homestead he could convey it without committing a fraud against his creditors, even though ' they be judgment creditors. That the owner of a homestead can convey the same without being subject to the charge of a fraudulent conveyance is too well settled in Missouri to require further comment. In this case there was but forty acres of land, and it was of but little value. It was fully within the quantity and value fixed by the homestead law. Such being the case an action in equity to set aside the homesteader's deed to this forty acres, on the ground of fraud as against his creditors (which is the present action), cannot be sustained. There is no question about a surplus over and above the statutory homestead involved in this action, for the good reason that the land conveyed (all the land the grantor owned) was less both in quantity and value, than the allowance of the homestead law.

The questions involved in Armor v. Lewis, 252 Mo. 1. c. 584, are in no way involved in this case. Nor were they involved in the case of Fields v. Jacobi, 181 S. W . 1. c. 69. There was an attempt to force the questions in Armor v. Lewis into the Fields-Jacobi case supra, but they were no more involved there than they are in the instant case. Because they were not involved, two of the judges dissented to that portion of the opinion which undertook to drag (by the ears) the questions in Armor v. Lewis, supra, into that case. The real issues in Armor v. Lewis are not in this case, nor were they (on the record) in the case of Fields v. Jacobi, supra. On the facts found in the instant case Levi Marler was the owner of forty acres of cheap land as a homestead. He transferred this land to his sister. The sister transferred it to one Coleman, who knew that Levi Marler

was indebted.   The sole question is whether or not a homesteader can convey good title to the homestead proper (not to the surplus, because there was none) when he has a creditor, without being subjected to a charge of fraud in such conveyance.   The question has been so often and so fully answered by this court, that the citation of the cases is a useless act.   It will be time enough to discuss the doctrines of Armor v. Lewis, supra, when we reach a case involving them.   They are not in the instant case, as a casual reference will show. *Woodson, J.,* concurs in these views.

BOND, J. (dissenting)—I dissent from the views expressed by the learned Commissioner in the opinion adopted in the above case in Division Number One.

The learned Commissioner holds in that case that the sale, under execution, of land subject to a homestead, is wholly void.   To this I cannot agree.   That it was void as to the homestead, nobody doubts; but that it was void as to the *remainder* interest in the lands, beginning after the *cessation* of the homestead, cannot, in my opinion, be sustained in reason under the terms of the applicatory statute.   I think the ruling should have been that as to the homestead itself and the entire interests arising therefrom, the sale was a nullity; but as to the remainder estate, *after the lapse of all homestead rights,* the sale carried the title and subjected it to the payment of the debt upon which the execution and sale was had.

My reasons are set forth *in extenso* in my dissenting opinion in the case of Armor v. Lewis, 252 Mo. l. c. 584, et seq.   I think the contrary view was incorrectly ruled by Court in Banc in the principal opinion in that case.   Subsequently two members of Division One have held the argument in the dissenting opinion to be sound (Fields v. Jacobi, 181 S. W. l. c. 69), where, upon the presentation of a similar point, BLAIR and BOND, JJ., concurred for the reasons stated in the dissenting opinion in Armor v. Lewis.   In view of that action I

State ex rel. v. Hackman.

dissented from the ruling recommended by the Commissioner in the present case, in order that the matter might be re-examined by the Court in Banc.